**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **ROBERT LOUIS DAVIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 3:08-cv-00083-MEF-CSC** |
| | ) |
| **CARY TORBERT, JR., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANTS' SPECIAL REPORT AND ANSWER**

COME NOW the Defendants in the above-styled cause, Major Cary Torbert, Captain Corey Welch, Lieutenant Ray Roberson, Sergeant Rodney Tabb, Correctional Officer Gwen Crawl, and Nurse Linda Stewart, and submit this Special Report and Answer in response to the Plaintiff's allegations.

**I.    INTRODUCTION**

The Plaintiff in this action, Robert Louis Davis, was, at the time he filed this action, incarcerated in the Lee County, Alabama Detention Center.  The Plaintiff was booked into the Detention Center on January 6, 2008 after being charged with Public Intoxication.  On January 23, 2008, Mr. Davis was charged with a Probation Violation, Failure to Appear to answer a Second Degree Forgery charge, and Failure to Appear on a Controlled Substance charge.  (See Defendants' Exhibit 1, Lee County, Alabama Detention Center Inmate Information Sheet; Defendants' Exhibit 2, Lee County Sheriff's Office Inmate Booking Sheet; and Defendants' Exhibit 3, five Lee County Sheriff's Office Inmate Charge Sheets.)

**II.    PLAINTIFF'S ALLEGATIONS**

The Plaintiff, in his original Complaint filed February 7, 2008, and in an Amendment to his Complaint filed March 17, 2008, makes the following allegations against the Defendants:

1.    He has not received his medication in a consistent manner, being denied the ability to receive it on some days;

2.    His signature was forged on a "payment plan" indicating that he was not indigent;

3.    Food at the Lee County Detention Center is served in inadequate quantities, is contaminated with hair and other objects, is exposed to rats and spiders, and supplies, apparently meant for inmates, are taken home by one jail officer;

4.    The general operations of the jail are deficient in that no personal hygiene items are supplied, overcrowded conditions exist, restroom facilities are inadequate and/or do not operate, and inmates are issued the same blankets as previously issued to other inmates;

5.    Inmate Requests are not answered;

6.    Notary services are denied; and

7.    Living quarters are searched while inmates are out on work details.

## III.    DEFENDANTS' RESPONSE TO THE PLAINTIFF'S ALLEGATIONS

The Defendants in this matter, Major Cary Torbert, Captain Corey Welch, Lieutenant Ray Roberson, Sergeant Rodney Tabb, Correctional Officer Gwen Crawl, and Nurse Linda Stewart, deny each and every allegation made against them by the Plaintiff as being untrue, and completely without basis in law or fact.

### A.    POLICIES AND PROCEDURES

The Lee County Sheriff's Office operates the Lee County, Alabama Detention Center according to a written set of policies and procedures which governs the conduct of the persons employed at the Detention Center.  (See Affidavit of Major Cary Torbert, "Torbert Aff.")  Those policies addressing the areas of concern raised by the Plaintiff are as follows:

1.    **Medical**

It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Center be entitled to a level of health care comparable to that available to citizens in the surrounding community in order to ensure their physical and emotional well-being.  All medical services rendered to inmates in the Lee County Detention Center are given under the direction of a licensed health care provider.  Sheriff's Office personnel are prohibited from ever summarily or arbitrarily denying an inmate's reasonable request for medical services. Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, and no member of the jail staff is allowed to substitute his or her judgment for those of the provider.  Inmates are guaranteed access to any diagnostic, laboratory, or other treatment services as directed by the Detention Center health care authority.  (See Torbert Aff.; and Exhibit 4, Lee County Detention Center Policy & Procedure Manual, Section 11, "Health Care Services.")

It is the policy of the Lee County Sheriff's Office that persons incarcerated in the Lee County Detention Center be entitled to safe dispensation and administration of prescription and nonprescription medication.  All medication prescribed for an inmate by a health care provider during the term of the inmate's incarceration is obtained by the Sheriff's Office and distributed to the inmate according to his or her doctor's directions.  (See Torbert Aff.; and Exhibit 4.)

All medication prescribed for inmates in the Lee County Detention Center is distributed either by or under the direction of the jail's nurse.  Records are kept reflecting the type of medication distributed to an inmate, the time the inmate received the medication, and the initials of any Detention Center official dispensing the medication.  These records are placed in the inmate's Detention Center medical file.  (See Torbert Aff.; and Exhibit 4.)

### 2. Co-Payment Plan

Inmates may, at any time, request to see the jail's nurse at "sick call," which is conducted on a regular basis. Inmates who are not indigent may be charged for sick call, physician visits, laboratory fees, and dentist's visits, or prescription fees. Currently, the fee for obtaining a prescription for an inmate is $3.00. (See Torbert Aff.; and Exhibit 4.)

If an inmate has insufficient funds in his or her jail account to pay for any type of fees, services will not be denied. If an inmate has no funds in his or her jail account, a lien will be placed on the inmate's jail account against future deposits to the account. No inmate who is indigent is charged any amount for any type of medical services or prescriptions, and is not denied any type of services because of an inability to pay. (See Torbert Aff.; and Exhibit 4.)

### 3. Food Services

It is the policy of the Lee County Sheriff's Office that inmates incarcerated in the Lee County Detention Center be provided with a nutritionally adequate diet. In order to ensure that this takes place, menus have been submitted to and approved by a registered dietician at Auburn University. Any menus which are modified are changed in such a manner so that foods substituted are equal in nutritional values to those originally planned for. (See Torbert Aff.; and Exhibit 5, Lee County Detention Center Policy & Procedure Manual, Section 12, "Food Services.")

Inmates in the Lee County Detention Center are served three meals each day at regularly scheduled times. At least two of those meals are hot. Unless unusual circumstances warrant, all meals served to inmates are prepared in the kitchen at the Lee County Detention Center under supervision of the jail staff. Inmates on work release, or work details, may receive food either at the Detention Center, by a sack lunch, or from an outside source during the time they are away from the Detention Center. (See Torbert Aff.; and Exhibit 5.)

4

It is the policy of the Lee County Sheriff's Office that adequate health protection be provided at the Detention Center for both staff and inmates by requiring that persons working in food service areas to meet established health and sanitation standards. Generally, persons who are working in food services must pass a tuberculosis test before beginning work. The general health of all inmate workers is monitored by a corrections officer assigned to supervise the food service area in order to ensure that inmate workers are free from illness which may be transmittable by food. All persons working in the food service area are also monitored for cleanliness and instructed to wash their hands upon beginning work or returning from toilet facilities. All persons working in the food services area are required to wear hairnets, shower at least once each day or, if necessary, more often, and to have clean laundry daily. Temperatures of the refrigerators, freezers, and dishwater are checked daily, and all areas of the kitchen are cleaned on an ongoing basis. The kitchen is regularly inspected by a senior member of the jail staff in order to ensure that all safety and sanitation standards are being met. In addition, members of the jail staff are required to cooperate with the Alabama Department of Public Health, the Alabama Department of Corrections, the State of Alabama Fire Marshal's Office, or any other agency inspecting the Detention Center and/or the Detention Center's kitchen. Any problems noted during the inspection of the Detention Center or its kitchen by any outside agencies are, if possible, immediately remedied. (See Torbert Aff.; and Exhibit 5.)

The officers assigned to supervise the kitchen facilities at the Lee County Detention Center inspect food service areas and equipment after each meal to be sure that they are clean and sanitary. All utensils, trays, cups, and other items used in the preparation and service of meals are washed and sterilized after each use. Kitchen floors are swept and mopped after each meal. Refrigerators and freezers are cleaned and kept frost-free. Countertops and work areas are cleaned after each use. A general cleaning of the entire food service area takes place at least

once each week, and other areas, such as piping, fans, and lights are cleaned as needed. (See Torbert Aff.; and Exhibit 5.)

All meals at the Lee County Detention Center are prepared in a clean and sanitary manner. Only government inspected meats and poultry are served, and no home canned or preserved foods are served. Raw foods are washed and cleaned thoroughly before being served. (See Torbert Aff.; and Exhibit 5.)

A member of the Detention Center staff observes the service of all food to inmates in order to ensure that proper portions of food are on each tray. (See Torbert Aff.; and Exhibit 5.)

### 4.      General Operations

It is the policy of the Lee County Sheriff's Office that a healthy environment be maintained within the Lee County Detention Center for the benefit of both inmates and the Detention Center staff. In order to accomplish this goal, the Chief Deputy, Captain, Lieutenant, and shift supervisor are charged with the responsibility of ensuring that all ventilation and heating units in the Detention Center are functioning properly and circulating a sufficient amount of air. Also, the entire staff is charged with the responsibility of taking measures within their control to ensure that proper temperature is maintained at all times. Lighting within the Detention Center is sufficient, and broken, damaged, or burned out fixtures are replaced as soon as practical. (See Torbert Aff.; and Exhibit 6, Lee County Detention Center Policy & Procedure Manual, Section 9, "Physical Plant.")

Plumbing facilities within the Lee County Detention Center are maintained in order to ensure that both hot and cold running water and toilet facilities are available to inmates at all times. Any failures of the mechanical features of the jail are reported immediately to a senior officer on duty, who is charged with taking immediate action to safeguard inmates and staff until the problem can be corrected. The Chief Deputy and a fire safety officer are required to conduct

tests, as necessary to verify that proper fire procedures and safeguards are in place. (See Torbert Aff.; and Exhibit 6.)

All employees of the Lee County Detention Center are charged with the responsibility of continuously monitoring all environmental conditions within the facility and reporting any problem to the senior officer present immediately upon learning of the problem. (See Torbert Aff.; and Exhibit 6.)

It is the policy of the Lee County Sheriff's Office that a high level of pest and vermin control be maintained within the Detention Center in order to ensure a minimum level of infestation. At least once each month, the Chief Deputy Sheriff is charged by the Sheriff with the responsibility of ensuring that all areas of the Detention Center are sprayed with insecticide by a licensed pest control company. Shift supervisors are charged with the responsibility of observing the effectiveness of pest control services and, when conducting daily housekeeping inspections, looking for possible or potential vermin or pest problems. Any such problems must be immediately brought to the attention of the Chief Deputy Sheriff. (See Torbert Aff.; and Exhibit 6.)

It is the policy of the Lee County Sheriff's Office that the Lee County Detention Center accomplish scheduled maintenance in order to ensure that the facility and its equipment are kept in good repair. Living areas within the Detention Center are, insofar as possible, kept free of litter, dust, mold, mildew, corrosion, vermin, or any other objectionable or unhealthy condition. Plumbing within the Detention Center is to be maintained in a serviceable condition, free from leakage. Regular inspections take place to ensure that all plumbing has a sufficient amount of pressure to accomplish the tasks intended, and that water is at the appropriate temperature. Any maintenance problems are reported on a daily Detention Center Log, and the Captain or Chief Deputy is to be notified so that any problem may be corrected. (See Torbert Aff.; and Exhibit 6.)

It is the policy of the Lee County Sheriff's Office that the staff at the Lee County Detention Center maintains strict sanitation practices which provide persons incarcerated in the Detention Center and members of the Detention Center staff with a healthy and sanitary living and working environment.  In furtherance of this policy, all areas of the Lee County Detention Center, including calls, floors, walls, sinks, toilets, and showers are cleaned each day.  Inmates serving sentences are required to do such work as the Sheriff or Chief Deputy Sheriff deems reasonable to maintain the sanitary conditions throughout the Detention Center.  All inmate cleaning activities are supervised by a member of the jail staff to ensure that the work is thorough and complete.  (See Torbert Aff.; and Exhibit 7, Lee County Detention Center Policy & Procedure Manual, Section 13, "Sanitation and Clothing.")

All areas of the Lee County Detention Center are inspected at least twice each week by the Chief Deputy to ensure that proper sanitation practices are being carried out by the staff and inmates.  As a part of this inspection, the Chief Deputy ensures that all areas of the facility are clean and orderly, that lighting and ventilation equipment are working properly, and that no health or safety hazards exist.  (See Torbert Aff.; and Exhibit 7.)

The Chief Deputy Sheriff is charged by the Sheriff of Lee County with the responsibility of reviewing all inspection reports by outside agencies and implementing any necessary plans of action to correct all health and sanitation deficiencies noted on reports resulting from such inspections.  Each shift supervisor is charged with the responsibility for ensuring that the Detention Center is cleaned during his or her shift as directed by the Chief Deputy.  Shift supervisors must inspect all areas of the Detention Center during and after clean up to ensure that assigned tasks were completed.  (See Torbert Aff.; and Exhibit 7.)

It is the policy of the Lee County Sheriff's Office that a supply of cleaning materials be kept on hand to sustain daily housekeeping practices within the Detention Center.  Members of

the Detention Center staff are required to maintain a housekeeping plan and to carry that plan out on a daily basis. (See Torbert Aff.; and Exhibit 7.)

It is the policy of the Lee County Sheriff's Office that persons incarcerated in the Lee County Detention Center be given a clean set of facility issued clothing, linens, bedding, and a towel upon admission to the Lee County Detention Center in order that their sanitation and hygiene may be maintained. All facility issued clothing and linens are laundered at the Lee County Detention Center. Linens are laundered at least once each week; blankets are laundered at least once each month. When an inmate leaves the Detention Center, all clothing, linens, and blankets belonging to the Detention Center are collected and laundered before being reissued. (See Torbert Aff.; and Exhibit 7.)

### 5.    Request Forms

It is the policy of the Lee County Sheriff's Office that personnel employed at the Lee County Detention Center be aware of and protect inmate rights, both civil and legal, and that inmates have access to the courts, attorneys, and their authorized representatives. In furtherance of this policy, inmates may conduct written communications with attorneys or courts, use telephones in the Detention Center's day rooms each day, have visits from attorneys, probation officers, and others authorized for legal visits, and may visit a law library maintained by the Sheriff's Office. Inmates who are indigent are provided with stamps in order that they may communicate by mail. (See Torbert Aff.; and Exhibit 8, Lee County Detention Center Policy & Procedure Manual, Section 14, "Inmate Rights.")

It is the policy of the Lee County Sheriff's Office that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the Sheriff, Chief Deputy Sheriff, or any Detention Center personnel. All such requests must be made in writing on an Inmate Request Form. Members of the jail staff are charged with the responsibility of

distributing Inmate Request Forms to inmates who wish to utilize them. Requests of an emergency nature are handled immediately, without the necessity of a written request. All requests are forwarded to the Chief Deputy Sheriff, who will, if necessary, send the request to any other responsible or proper authority. If possible, members of the Detention Center staff receiving a grievance from an inmate should answer that grievance. If he or she is not able to do so, the grievance should be forwarded to the Chief Deputy Sheriff for additional action. Detention Center staff receiving a grievance from an inmate must review the grievance, write a response, sign and date the response, place a copy of the response in the inmate's jail file, and return a completed copy to the inmate. Any inmate who is dissatisfied with the response he receives may appeal, in writing, to the next higher level in the chain of command of the Sheriff's Office. No negative sanction may be taken against any inmate for filing a grievance. (See Torbert Aff.; and Exhibit 8.)

### 6.     Notary Services

Notary services are made available to persons incarcerated in the Lee County Detention Center for any documents requiring verification. An inmate may obtain a notary seal by submitting a request form, along with a copy of the document which he wishes to have notarized. The Chief Deputy Sheriff may, at his discretion, either have the document notarized and returned to the inmate, or returned without a notary seal if a notary's verification is unnecessary. (See Torbert Aff.)

### 7.     Searches

It is the policy of the Lee County Sheriff's Office that frequent, unannounced searches of inmates, their cells, and all other areas of the Lee County Detention Center be conducted by the Detention Center's staff in order to secure the facility's safety and security. All searches are required to be done in a manner which avoids unnecessary force, embarrassment, or indignity to

the inmate.  All items found during searches which are deemed to be contraband are to be dealt with appropriately, by securing such items and evidence and/or disposing of such items.  (See Torbert Aff.; and Exhibit 9, Lee County Detention Center Policy & Procedure Manual, Sections 7, "Security," Title 7.05, "Searches," and Title 7.06, "Contraband.")

### B.     FACTS

#### 1.     Medical

The Lee County Sheriff's Office employs the services of a licensed nurse, Linda Stewart, and a physician, Dr. John McFarland, to provide medical services to inmates.  (See Torbert Aff.)

At the time the Plaintiff was booked into the Lee County Detention Center, the booking officer completed a Medical Screening Form.  The Plaintiff noted several past problems, and informed Sergeant Rodney Tabb, who was the booking officer on that date, that he was taking blood pressure medication.  (See Affidavit of Sergeant Rodney Tabb, "Tabb Aff."; and Exhibit 10, Lee County Sheriff's Office Medical Screening Form.)

After his admission to the Detention Center, Inmate Robert Davis was examined by the jail's nurse, Linda Stewart, and the jail's physician, Dr. John H. McFarland, on January 9, 2008. During this examination, Inmate Davis stated that he was being treated for high blood pressure by Dr. Robert Klinner, Jr., and that he had some sinus problems.  The medical staff decided to obtain records from Dr. Klinner regarding the Plaintiff's medication, and to check his blood pressure while waiting for those records to be delivered.  (See Affidavit of Nurse Linda Stewart, "Stewart Aff."; and Exhibit 11, Doctor/Nurse's notes for Robert Davis dated January 9, 2008.)

Because inmate Robert Davis was taking medication at the time he was admitted to the Lee County Detention Center on January 9, 2008, arrangements were made to verify that medication with his treating physician in order that it might be continued.  The Detention Center Nurse, Linda Stewart, faxed a Health Care Release signed by the Plaintiff to Dr. K.V. Klinner,

Jr., the Plaintiff's treating physician.  Dr. Klinner, in return, faxed medical records back to Nurse Stewart verifying the Plaintiff's medication.  (See Stewart Aff.; Exhibit 12, Lee County Detention Center Fax Cover Sheet and Release; and Exhibit 13, Medical Records for Plaintiff from Dr. K.V. Klinner, Jr. verifying medication.)

On January 15, 2008, Inmate Davis was again examined by Nurse Stewart and Dr. McFarland.  It was determined during this examination that Mr. Davis had an "upper respiratory infection with probable sinusitis."   A course of treatment was prescribed, including two prescription medications, Duratuss and Septra DS.   (See Stewart Aff.; and Exhibit 14, Doctor/Nurse's notes for Robert Davis dated January 15, 2008.)

On January 27, 2008, Inmate Davis once again reported to sick call and was examined by the Detention Center's nurse and physician.  On that date it was noted that his upper respiratory infection was resolving.  He was also observed to have Dermatitis and was given hydrocortisone cream.  (See Stewart Aff.; and Exhibit 17, Doctor/Nurse's notes for Robert Davis dated January 27, 2008.)

Medications were distributed to Inmate Robert Davis according to his treating physician's instructions.  Mr. Davis first began receiving medication on January 11, 2008 and, during his incarceration received five different types of medication.  Medication administration records were completed to verify the dispensation of his medication during January and February, 2008.  (See Stewart Aff.; Exhibit 15, Medication Sheet – Administration Record for Robert Davis for January, 2008; Exhibit 16, Medication – Administration Record Sheet for Robert Davis for February, 2008.)

At no time during his incarceration in the Lee County Detention Center was Inmate Robert Davis denied medication, or medical care of any kind.  Instead, he was properly treated for all medical conditions which he presented.  Medication was never withheld for any reason.

All prescription medication was given to Inmate Davis according to his doctor's directions. (See Stewart Aff.)

2.    <strong><u>Forgery of Signature on Payment Plan Sheet</u></strong>

The Lee County Sheriff's Office charges inmates $3.00 for each prescription medication obtained for them during the time they are incarcerated in the Lee County Detention Center. Inmates who are not able to pay are not required to make such a co-payment, and medications are distributed to them free of charge. (See Tabb Aff.)

The Plaintiff in this action, Mr. Robert Davis, has supplied the Court with a copy of his Funds Transactions for the time he was incarcerated in the Lee County Detention Center in 2008. Twice on that Transaction Sheet it is noted that Mr. Davis has been charged $3.00 for a prescription medication for a total of $6.00. (See Tabb Aff.; and Plaintiff's Complaint, as Amended.)

The Funds Transaction Sheet referenced above also reflects that Inmate Robert Davis has had no funds deposited into his account. This qualifies Robert Davis as indigent, allowing him to receive his medication without prepayment, and also entitling him to receive other items given to indigent inmates. Should funds be deposited in Davis' inmate account, he will no longer be considered indigent, and the $6.00 owed to the Sheriff's Office will be deducted from any such funds before they are made available to Davis for use at the Detention Center's Commissary or for other purposes. (See Tabb Aff.; and Plaintiff's Complaint, as Amended.)

The only items Defendants are aware of that would allow the Plaintiff to claim that his signature has been forged are two Lee County Detention Center Medical Charge Forms. These documents provide a place for an inmate's signature and date where a non-indigent inmate may verify that he is willing to have funds transferred to pay for a prescription, doctor's visit, or similar procedure. Mr. Davis' signature was not forged on this document. His name appears at

13

the top, and on the line for inmate's signature "co-pay" is written on each document. Should funds become available to Mr. Davis in his inmate account, an additional Lee County Detention Center Medical Charge Form will be completed which Mr. Davis will be required to sign before receiving additional medication or medical services. (See Tabb Aff.; and Exhibits 17 and 18, Lee County Detention Center Medical Charge Forms dated January 15, 2008 and February 5, 2008, respectively.)

On January 25, 2008, Inmate Robert Davis submitted an Inmate Request Form to Sergeant Rodney Tabb requesting a "ledger stating my financial situation since my arrival at the Lee County Detention Center." Inmate Davis was given a copy of his Funds Transaction Sheet on February 6, 2008 by Sergeant Rodney Tabb. (See Tabb Aff.; and Exhibit 19, Inmate Request Form dated January 25, 2008.)

On February 27, 2008, Inmate Davis requested another copy of his Funds Transaction Sheet. On the following day, February 28, 2008, Sergeant Rodney Tabb "gave Inmate Davis a copy of his Funds Transactions and two stamped envelopes for his indigency." (See Tabb Aff.; and Exhibit 20, Inmate Request Slip dated February 27, 2008.)

At no time has Sergeant Rodney Tabb, or, to his knowledge, any other member of the Lee County Detention Center staff, forged Inmate Robert Davis' signature on any document. (See Tabb Aff.)

### 3.    **Food**

Food served to inmate Robert Davis, and other persons incarcerated in the Lee County Detention Center, is wholesome, nutritious, and clean. Regularly, members of the Detention Center staff eat the same food as that served to the inmates. No persons known to the Defendants have had any ill effects from consumption of the Detention Center's food. There have been no verified circumstances of foreign matter found in food which are attributable to

members of the kitchen staff, or to contaminated supplies.  (See Affidavit of Lieutenant Ray Roberson, "Roberson Aff.")

The Alabama Department of Public Health regularly inspects the Lee County Detention Center and its kitchen.  The last such inspection took place on June 28, 2007.  During that inspection, out of a possible score of 100, the Detention Center's kitchen received a grade of 97. Only two minor items were found to be deficient, and these were corrected immediately after the inspector pointed them out to the Detention Center's staff.  No deficiencies of a critical nature were found.  (See Roberson Aff.; and Exhibit 21, Alabama Department of Public Health Food Establishment/Retail Food Store Inspection Report.)

The Lee County Detention Center is regularly inspected by the State of Alabama Department of Corrections.  The most recent inspection by the Department of Corrections took place on June 15, 2007.  During that inspection, no major deficiencies were found in the operation of the facility.  (See Roberson Aff.; and Exhibit 22, State of Alabama Department of Corrections Jail Inspection Report.)

Persons preparing and serving food at the Lee County Detention Center are required to be clean, illness-free, and to conduct themselves appropriately during the preparation and service of food.  Inmate trusties working in the food service areas must wear hairnets, wash their hands frequently, and are constantly under the supervision of a member of the jail staff to ensure that their practices are clean and acceptable.  (See Roberson Aff.)

Lieutenant Timothy C. Jones, who is not a defendant in this case, conducted an investigation into the Plaintiff's complaints about conditions and food.  Lieutenant Jones investigated the Plaintiff's claims that rodents and vermin were crawling in and around his food. The investigation revealed no visible evidence which could validate that claim.  A copy of the written report answering Inmate Davis' claim was forwarded to Davis on February 12, 2008.

(See Roberson Aff.; and Exhibit 23, Lee County Sheriff's Office Special Report dated February 12, 2008.)

The Plaintiff alleges in his Complaint that Correctional Officer Gwen Crawl frequently takes supplies, presumably food, meant for inmates to her home. Officer Crawl states affirmatively that she has never taken any type of food meant for inmates away from the Lee County Detention Center, to her home or any other location. (See Affidavit of Gwen Crawl.)

The Defendants deny that they have, in any way, served unhealthy or unwholesome food to Robert Davis, or any other person incarcerated in the Lee County Detention Center, and state affirmatively that the food served to inmates at the Detention Center is wholesome, nutritious, and in adequate portions to constitute a healthy diet. (See Roberson Aff.)

### 4. Operations

At the time the Plaintiff was admitted to the Lee County Detention Center he was issued a jail uniform, linens, and a blanket. All these items had been laundered before they were given to him, and were clean and free of vermin when they were issued. The Plaintiff has had regular laundry services available to him since he has been incarcerated, and his clothes, linens, towels, and other items have been kept clean. (See Affidavit of Captain Corey Welch, "Welch Aff.")

Inmates incarcerated in the Lee County Detention Center may purchase through the jail's Commissary any type of personal hygiene items that are available. Inmates such as Robert Davis, who are indigent, have "indigent packages" made available to them. These packages contain soap, deodorant, toothbrushes, and other necessary personal hygiene items. Indigent inmates may request such packages at any time, and they are freely given, unless the inmate is somehow misusing the items, or abusing the system in some way. (See Welch Aff.)

At no time during his incarceration in the Lee County Detention Center was Robert Davis denied personal hygiene items due to his indigency. Personal hygiene items were distributed to

him whenever he requested them, and if he has, at any time, been without such items, it is due to his failure to request them.  (See Welch Aff.)

A licensed pest control company, Terminix, is employed to spray for bugs and vermin in the Lee County Detention Center at least once each month.  They may be called in more frequently, as needed.  (See Torbert Aff.)

The Chief Jailer for Lee County, Alabama, Major Cary Torbert, makes regular inspections of the Lee County Detention Center.  During those inspections, he has not seen any spiders in the Detention Center.  In addition, no rats or mice are present at the Detention Center to the best of his knowledge.  Had rats, mice, or any other vermin been present during any inspection, or had their presence been brought to his attention by some other means, appropriate measures would have been taken to eliminate such problems.  (See Torbert Aff.)

The Lee County Detention Center expanded and opened new housing areas during 2007.  In spite of this expansion, the Detention Center occasionally has fewer beds than inmates.  In addition, particular classification areas within the Detention Center may have more inmates assigned to them than there are beds in that area.  No inmates, however, are required to sleep on the floor.  Inmates are issued either a temporary bunk, or, at the very least, a mattress which is either placed on the floor, or, if possible, a table or other raised area.  Inmates who are not assigned a jail bunk are given one as soon as one becomes available.  (See Torbert Aff.)

As part of the grievance noted above addressing the Plaintiff's problems with food, Lieutenant Timothy Jones of the Lee County Sheriff's Office also responded to a grievance filed by the Plaintiff concerning general jail conditions.  Specifically, Lieutenant Jones found that Davis' grievances were not valid for several reasons.  When asked about chipping paint, Davis told Lieutenant Jones that he "meant the paint chipping off the floor."  Lieutenant Jones inspected the floor, and found only everyday wear.  The only item that Lieutenant Jones could

find which was not fully functional in Inmate Davis' cell block was an intercom unit. Maintenance personnel were made immediately aware of the problem with the intercom so that they could resolve the issue.  (See Exhibit 23.)

The Defendants deny that they have required the Plaintiff to live in any type of conditions which were inhumane, inhuman, or in any way detrimental to his health or well-being.  The Lee County Detention Center is cleaned regularly, and unclean, unsafe, or unhealthy conditions are not tolerated.  (See Welch Aff.; Torbert Aff.)

### 5.    Requests

The Plaintiff states in his Complaint that Inmate Requests which he has sent to various members of the Detention Center staff, and Sheriff Jay Jones, have not been answered.  This is simply not true.  All requests submitted by Inmate Davis during his incarceration were responded to in a prompt and appropriate manner.  (See Torbert Aff.; Exhibits 19, 20, 23; Exhibit 24, Inmate Request Slip dated February 21, 2008; and Exhibit 25, Inmate Request Slip dated February 20, 2008, with attached letter and Lee County Sheriff's Office Special Report as response.)

Defendants deny that they have, at any time, failed to respond to any reasonable request submitted by Inmate Davis, or to address any grievance which he made during his incarceration in the Lee County Detention Center.  (See Torbert Aff.)

### 6.    Notary Services

Notary services are available to inmates in the Lee County Detention Center upon request.  Robert Davis has never submitted any type of documents with requests that they be notarized.  (See Torbert Aff.)

On February 21, 2008, Robert Davis submitted an Inmate Request Slip asking to use the library and for a notary.  No documents were referenced or attached to that Request Slip.  Inmate

18

Davis was taken to the law library on February 23, 2008 and spent approximately and hour and fifteen minutes there.  (See Exhibit 24; Torbert Aff.)

Had Robert Davis, or any other inmate in the Lee County Detention Center, submitted valid documents requiring a notary seal, notary services would have been provided to him.  The Lee County Sheriff's Office does not impede an inmate's access to the courts in any way, and does not deny notary services when such services are necessary.  (See Torbert Aff.)

       7.    **Searches**

Inmate Robert Davis, during part of his incarceration in Lee County, Alabama, was allowed to participate in work details which leave the jail facility.  On February 20, 2008, Inmate Davis submitted a grievance stating that persons had entered his living area while he was out on a work detail and searched that area.  A response was forwarded to Inmate Davis stating that the Detention Center was county property, that no search warrants were needed to inspect it, and that as an inmate, his property could be searched at any time.  (See Torbert Aff.; and Exhibit 25.)

On February 22, 2008, an additional response was made to Inmate Davis' February 20, 2008 grievance regarding the search of his cell.  This response, from Sergeant Rodney Tabb, addressed the specific allegations made by the Plaintiff.  Officer Tabb's response stated, "Inmates' cells can be inspected and searched any time.  The cell was inspected and was found to be in poor condition.  Beds not made and property not in or under bunks and items not in property box or bag.  TV was removed until cell was in compliance."  (See Tabb Aff.)

Inmate Davis' February 20, 2008 grievance also stated that legal papers had been rummaged through during the search of his cell.  This matter was investigated by Sergeant Jessica Chambers of the Lee County Sheriff's Office, who found that no legal papers were removed from Davis' personal property.  (See Torbert Aff.; and Exhibit 25.)

The Defendants deny that they have conducted any type of illegal search of the Plaintiff's property or belongings in the Lee County Detention Center. At no time were legal papers taken from the Plaintiff, read, or misused in any way by a member of the jail staff. All searches of the Plaintiff's housing area and belongings were conducted in compliance with state and federal law. (See Torbert Aff.)

IV.    **LAW**

   A.    **All claims by Plaintiff against Defendants in their official capacities must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C. § 1983.**

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction as such claims are barred by the Eleventh Amendment to the United States Constitution. Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, Ala., 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).

In addition, the official capacities claims must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983 (emphasis added). The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Any claims against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983,

and therefore claims against them in their official capacities fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3 (11th Cir. 1990).

 **B.** **Defendants are entitled to qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.**

 Defendants were acting within their discretionary authority as Sheriff and Detention Center officials of Lee County during all times relevant to Plaintiff's Complaint because all their actions were taken in the furtherance of their job duties.  See, e.g. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252 (11th Cir. 2004).  Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

 In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme

Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."

Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations

omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must

still show that clearly established law provided the Defendants with fair warning that their conduct

was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding

that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or

federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the

total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003)

(citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity"

case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to

show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the

unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government

agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent

officer or one who was knowingly violating the law would have done such a thing, the government

actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

### 1.    Plaintiff's conditions of confinement claims.

In order to establish a conditions of confinement claim Plaintiff "must prove three

elements:    (1) a condition of confinement that inflicted unnecessary pain or suffering

[constituting cruel and unusual punishment], (2) the defendant[s'] 'deliberate indifference' to

that condition, and (3) causation.  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392,

2399, 69 L. Ed. 2d 59 (1981) (first element); Wilson v. Seiter, [502] U.S. [294, 303], 111 S. Ct.

2321, 2327, 115 L. Ed. 2d 271 (1991) (second element); Williams v. Bennett, 689 F.2d 1389-90

(11th Cir. 1982) (third element).  Whether a particular condition of confinement constitutes cruel

and unusual punishment is an objective inquiry; whether jail officials were deliberately indifferent to that condition is a subjective inquiry. Wilson v. Seiter, 502 U.S. at 290. In the instant case, the Plaintiff cannot establish either the objective or subjective components of his conditions of confinement claims.

### a.     Objective Component

With regard to the objective component, the Eleventh Circuit has held that "*extreme* deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment.[1] Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004) (emphasis in original). "[A] constitutional violation occurs only where the deprivation alleged is, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994). "[T]he Constitution does not mandate comfortable prisons." Chandler, 379 F.3d. at 1289. In the instant case, the Plaintiff cannot present evidence of any *extreme* deprivation that could be objectively considered "cruel and unusual."

### b.     Subjective Component

Even if the Plaintiff's conditions of confinement were objectively "cruel and unusual," there must still be evidence of subjective deliberant indifference on the part of each Defendant. "To be deliberately indifferent, a [jail] official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993). "[A] plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. (quoting Duckworth v. Franzen, 780 F.2d 645,

---

[1] "Claims involving the mistreatment of . . . pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. But it makes no difference whether [the plaintiff] was a pretrial detainee or a convicted prisoner because 'the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving pretrial detainees.'" Bozeman v. Orum, 422 F.3d 1265, 1271 (11th Cir. 2005) (internal citations omitted).

653 (7th Cir. 1985), <u>cert. denied</u>, 479 U.S. 816 (1986).  There must be evidence that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  The Court equates the level of culpable intent required to the standard employed in the context of *criminal* recklessness prosecutions.  <u>Id.</u> at 837-839.  No liability can be attributed to "an official's failure to alleviate a significant risk which he should have perceived but did not."  <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1491 (11th Cir. 1996).  Where jail officials attempt to remedy constitutional short-comings but fail to do so, the official cannot be found to have been "deliberately indifferent" unless the official knew of but disregarded appropriate effective alternatives.  <u>LaMarca</u>, 995 F.2d at 1536.  Furthermore, the United States Supreme Court has held that a significant injury is required in order to sustain a conditions of confinement claim.  <u>Porter v. Nussle</u>, 534 U.S. 516, 528 (U.S. 2002).

Plaintiff cannot show that Defendants have been deliberately indifferent with regard to the conditions of confinement at the Lee County Detention Facility.  Plaintiff has failed to allege or offer any evidence sufficient to sustain a claim that any actions of the Defendants constituted cruel and unusual punishment.  In this case, none of the conditions of which Plaintiff complains constitutes an excessive risk to his health or safety.  Plaintiff has not shown or even alleged how he has been injured as a result of any of his allegations.  Furthermore, the Plaintiff has not presented sufficient evidence to show that any impairment to his physical or mental condition actually resulted from the aforementioned environment.  In the instant case, even if there were an excessive risk to his health or safety, the Plaintiff has not sufficiently alleged that any of the Defendants knew of or disregarded that risk.  There are no grievances in the Plaintiff's file regarding his allegations of the conditions of his confinement.  The Plaintiff has failed to

sufficiently allege how each Defendant was deliberately indifferent to any alleged conditions. Plaintiff has failed to allege that he suffered any injury as a result of the conditions of his confinement.

Based on the foregoing, it is clear that the Defendants did not violate Plaintiff's constitutional rights.   Further, Plaintiff cannot show that clearly established law provided the Defendants with fair warning that their conduct was unlawful.   Therefore, the Defendants are entitled to qualified immunity.  Because the Plaintiff cannot meet the objective or subjective tests as set forth in Farmer, *supra*, his conditions of confinement claims are due to be dismissed.

## 2.     Medical Claims

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that the Defendant was deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious."  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.  Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence").   Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown.  Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

Defendants assume for purposes of their motion for summary judgment that Plaintiff had a serious medical condition.  However, Plaintiff was treated by the jail nurse as well as the jail

medical doctor during his incarceration.     Plaintiff was given his prescribed medications according to his physician's directions.

### 3.     Access to the Courts

The Plaintiff's allegation that he has been denied access to the courts due to the inavailability of a notary is without merit.  Clearly, the Plaintiff has been able to present his case to this Court with the result that the Court has ordered the Defendants to file the present response.

In Bounds v. Smith, 430 U.S. 817 (1977), the Supreme Court held that prisoners are entitled to a reasonably adequate opportunity to present claims of constitutional violation to the courts.  In Lewis v. Casey, 518 U.S. 343 (1996), the Supreme Court held that to establish a Bounds violation an inmate must demonstrate the existence of an "actual injury" to the inmate's efforts to pursue a non-frivolous legal claim.   In addition, Lewis emphasizes that a Bounds violation is related back to the capability to present claims.  The Supreme Court went on to state that Bounds "guarantees no particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  A plaintiff, such as in this action, may demonstrate an injury only by showing that he has not been provided with the capability of filing suit.   The pleadings filed in this case indicate that the Plaintiff has been provided an adequate opportunity to file his case, with or without access to a notary's services.

### 4.     Diet

The Constitution clearly requires that prisoners be provided "reasonably adequate food." See Hamm v. DeKalb County, 777 F.2d 1567 (11th Cir. 1985).  A "well balanced meal containing sufficient nutritional value to preserve health is all that is required."   See Jones v. Diamond, 636 F.2d 1364, 1378 (5th Cir. 1981) (en banc), cert. dismissed, 453 U.S. 950 (1981);

Newman v. Alabama, 559 F.2d 283, 286 (5th Cir. 1977), reversed in part on other grounds, 438 U.S. 781 (1978); Smith v. Sullivan, 553 F.2d 373, 380 (5th Cir. 1977).

Other than the Plaintiff's own opinion, he has offered no evidence or proof that the meals served to inmates at the Lee County Detention Center constitute an inadequate diet, or are unsafe or unwholesome in any way.

## V.     SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  Greason v. Kemp, 891 F.2d 829, 831 (11th Cir. 1990).  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the non-movant's benefit.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[2]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Mass. Sch. of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

---

[2] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## VI.    ANSWER

The Defendants in this action deny each and every allegation made by the Plaintiff against them.   In addition, Defendants assert the affirmative defenses of qualified immunity regarding the Plaintiff's federal law claims against them, and, insofar as the Plaintiff's Complaint may be construed to make claims against them pursuant to Alabama law, they assert the defense of sovereign immunity to such claims.

## VII.    MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a Motion for Summary Judgment, and grant unto them the same.

## VIII.    CONCLUSION

The Defendants in this cause, Major Cary Torbert, Captain Corey Welch, Lieutenant Ray Roberson, Sergeant Rodney Tabb, Correctional Officer Gwen Crawl, and Nurse Linda Stewart, deny that they have acted, or caused anyone to act in such a manner as to deprive the Plaintiff, Robert Louis Davis, of any right to which he is entitled.   (See Torbert Aff.; Welch Aff.; Roberson Aff; Tabb Aff.; Crawl Aff.; Stewart Aff.)

Respectfully submitted this the 2nd day of April, 2008.

**s/Daryl L. Masters**
DARYL L. MASTERS, Bar No. MAS018
Attorney for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
Post Office Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  dmasters@webbeley.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 2nd day of April, 2008, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and that I have mailed a true and correct copy by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Robert Louis Davis
Lee County Justice Center
Post Office Box 2407
Opelika, Alabama  36801

**s/Daryl L. Masters**
OF COUNSEL

# EXHIBIT 1

Lee County, Alabama Detention Center
Inmate Information Sheet

# Inmate Information Sheet

| Booking Number: | 080000114 |
|---|---|

Name:       ROBERT LOUIS DAVIS
Address:    116 CHESTER AVE
City:       OPELIKA
State:      Alabama          Zip:    368010000

5:42:43PM

## Physical Description

| | | | |
|---|---|---|---|
| Race: | Black | Hair: | Black |
| Gender: | Male | Eyes: | Brown |
| Height: | 601 | Complexion: | Dark |
| Weight: | 160 | DOB: | DOB |
| Scars/Tattoos: | NONE NOTED | | |

Age:    43

## Personal Information

| | | | |
|---|---|---|---|
| DL State: | Alabama | Home Phone: | 0 |
| DL Number: | | Work Phone: | 0 |
| SSN: | 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 | | |
| SID Number: | | | |

## Booking Information

| | | | |
|---|---|---|---|
| Arrest Date: | 01/06/2008 | Booking Officer: | AUSBY |
| Arrest Dept: | OPD | Booking Date: | 01/06/2008 |
| Arrest Offcr: | DANIEL | Booking Time: | 3:56 AM |
| Search Offcr: | PERSONS | Facility: | 01 |
| Meal Code: | 06 | Cell Assignment: | HC5 |

## Charge Information

| Offense | Fine | Bond | Disposition |
|---|---|---|---|
| PROBATION VIOLATION | 0.00 | 0.00 | None |

# EXHIBIT 2

Lee County Sheriff's Office
Inmate Booking Sheet

LEE COUNTY SHERIFF'S OFFICE
01/06/2008    04:19:36    INMATE BOOKING SHEET    PAGE    1
==================================================================

BOOKING NO: 080000114

INMATE NAME: DAVIS ROBERT LOUIS
        ALIAS:                                    RACE: B      SEX: M
        ALIAS:                                    HT: 6'01"  HAIR: BLK
      ADDRESS: 116 CHESTER AVE                     WT: 160  EYES: BRO
  CITY/ST/ZIP: OPELIKA, AL 36801           COMPLEX: DRK
   HOME PHONE: 000-000-0000                    SSN: 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
          DOB: 02/07/1964   AGE:  43        DL ST: AL     DLN:
   PLCE BIRTH: LEE CO                          SID:
        STATE: AL                            LOCID: 6153
    M. STATUS: SINGLE
     RELIGION: BAPTIST
   GANG ASSOC:
 SCARS/TATTOOS: NONE NOTED
 KNOWN ENEMIES: NONE CLAIMED
      REMARKS:
--------------------------- NEXT OF KIN ------------------------------
  NEXT OF KIN: UKN                       RELATIONSHIP:
      ADDRESS:                                 PHONE: 000-000-0000
  CITY/ST/ZIP: ,
      REMARKS: TOO DRUNK TO ANSWER QUESTIONS
--------------------------- EMPLOYER INFO ----------------------------
     EMPLOYED: N
EMPLOYER NAME: N
      ADDRESS: N
  CITY/ST/ZIP: N, N
        PHONE: 000-000-0000
--------------------------- MEDICAL ---------------------------------
  HANDICAPPED: N   NEEDS: NONE
      GLASSES: N   SMOKE: Y
MEDICAL NEEDS: Y   NEEDS:
    PHYSICIAN:                      PHONE: 000-000-0000
      REMARKS: TOO DRUNK TO ANSWER QUESTIONS

      REMARKS: IRATE
      REMARKS:
--------------------------- PROPERTY --------------------------------
         CASH:        $00.67
  DESCRIPTION:
ADD. PROPERTY: STREET CLOTHING, LIGHTER, CHAPSTICK
ADD. PROPERTY:
ADD. PROPERTY:
   BIN NUMBER: 207
VEH IMPOUNDED:
  IMPOUND LOT:
      REMARKS: Court 4-16-08 - 1:30 P
      REMARKS:
==================================================================
I HAVE READ THE ABOVE ACCOUNTING OF MY PERSONAL INFORMATION, MEDICAL
INFORMATION, MONEY, AND OTHER PROPERTY AND I FIND IT TO BE TRUE AND ACCURATE.

INMATE: _____  DATE: 01-06-08  TIME: 0419

BOOK OFFICER: _____  DATE: 01-06-08  TIME: 0419

```
                         LEE COUNTY SHERIFF'S OFFICE
01/06/2008     04:19:36     INMATE BOOKING SHEET              PAGE    2
===============================================================================
BOOKING NO: 080000114     INMATE NAME: DAVIS ROBERT LOUIS
===============================================================================
           COURT: MUNICIPAL          ATTORNEY ON REC:
           JUDGE:                         PHONE: 000-000-0000
         REMARKS:
         REMARKS:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
    BOOK DATE: 01/06/2008  BOOK TIME: 03:56  BOOK TYPE: NORMAL

   ARREST DATE: 01/06/2008          BOOKING OFFICER: AUSBY
   ARREST DEPT: OPD                 CELL ASSIGNMENT: JC5  G11-B
 ARRST OFFICER: DANIEL                    MEAL CODE: 06   OPELIKA PD
 PROJ. RLSDATE: 00/00/0000                 FACILITY: 01   COUNTY JAIL
 SEARCH OFFCR: PERSONS             CLASSIFICATION:
   TYPE SEARCH: PAT                  WORK RELEASE: N
 INTOX RESULTS:

         HOLDS: N
        AGENCY:                  REASON:
        AGENCY:                  REASON:
        AGENCY:                  REASON:
        AGENCY:                  REASON:

         NOTES:
         NOTES:
         NOTES:
```

# EXHIBIT 3

Lee County Sheriff's Office
Inmate Charge Sheets

```
                          LEE COUNTY SHERIFF'S OFFICE
01/23/2008    09:55:16         INMATE CHARGE SHEET                     PAGE    1
================================================================================
BOOKING NO: 080000114    INMATE NAME: DAVIS ROBERT LOUIS
================================================================================
   CHARGE NO:   1  DISPOSITION: OPEN              HOLD: N

ALA STATUTE: OPD                        # OF COUNTS:    1
   OFFENSE: WRIT(PUBLIC INTOX)            WARRANT #:
    CASE #: 07-0004412
   BOND AMT: 500.00 CASH                     FINE:        $0.00
   BAIL AMT: 500.00 CASH
INIT APPEAR:                            SENTENCE DATE:
RELEASE DTE:
ARREST DATE: 01/06/2008                   ARST AGENCY: OPD
ARST OFFICR: DANIEL                           COUNTY: LEE
      COURT: MUNICIPAL                          JUDGE:
DEF ATTORNY:                            DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
--------------------------------------------------------------------------------
OFFENSE TYPE:    -
LEGAL STATUS:    -
      NOTES:
      NOTES:
      NOTES:

         Bonded Out:                Preliminary Hearing:
Waived/Bound Over to GJ:                       Indicted:
           Arraigned:                       Guilty Plea:
   Plea on Information:                    Guilty Verdict:
    Not Guilty Verdict:                        Dismissed:
         Bond Revoked:                  Bond Reinstated:
    Awaiting Probation:                 Probation Revoked:
 Probation Reinstated:              Court Ordered Rehab:
   Returned from Rehab:                  Sent to D.O.C.:
```

```
                           LEE COUNTY SHERIFF'S OFFICE
01/23/2008      09:55:16         INMATE CHARGE SHEET                      PAGE     2
============================================================================
BOOKING NO: 080000114   INMATE NAME: DAVIS ROBERT LOUIS
============================================================================
   CHARGE NO:   2  DISPOSITION: SENTENCED        HOLD: N

ALA STATUTE: OPD                        # OF COUNTS:   0
    OFFENSE: PROBATION VIOLATION          WARRANT #:
     CASE #: PB07-0004525
   BOND AMT: 60 DAYS                          FINE:       $0.00
   BAIL AMT:
INIT APPEAR:                          SENTENCE DATE:
RELEASE DTE: 04/09/2008
ARREST DATE: 01/06/2008               ARST AGENCY: OPD
ARST OFFICR: DANIEL                       COUNTY: LEE
      COURT: MUNICIPAL                     JUDGE:
DEF ATTORNY:                          DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
----------------------------------------------------------------------------
OFFENSE TYPE:     -
LEGAL STATUS:     -
      NOTES:
      NOTES:
      NOTES:

            Bonded Out:                    Preliminary Hearing:
Waived/Bound Over to GJ:                             Indicted:
             Arraigned:                          Guilty Plea:
    Plea on Information:                       Guilty Verdict:
     Not Guilty Verdict:                           Dismissed:
          Bond Revoked:                     Bond Reinstated:
     Awaiting Probation:                  Probation Revoked:
  Probation Reinstated:                 Court Ordered Rehab:
    Returned from Rehab:                       Sent to D.O.C.:
```

```
                          LEE COUNTY SHERIFF'S OFFICE
01/23/2008     09:55:16        INMATE CHARGE SHEET                    PAGE    3
===============================================================================
BOOKING NO: 080000114    INMATE NAME: DAVIS ROBERT LOUIS
===============================================================================
   CHARGE NO:    3  DISPOSITION: SENTENCED          HOLD: N

ALA STATUTE: OPD                          # OF COUNTS:     1
    OFFENSE: PUBLIC INTOXICATION            WARRANT #:
     CASE #:
    BOND AMT: 30 DAYS                            FINE:       $0.00
    BAIL AMT:
INIT APPEAR:                             SENTENCE DATE:
RELEASE DTE: 02/09/2008
ARREST DATE: 01/06/2008                   ARST AGENCY: OPD
ARST OFFICR: DANIEL                           COUNTY: LEE
      COURT: MUNICIPAL                          JUDGE:
DEF ATTORNY:                             DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
-------------------------------------------------------------------------------
OFFENSE TYPE:    -
LEGAL STATUS:    -
       NOTES:
       NOTES:
       NOTES:

             Bonded Out:                    Preliminary Hearing:
Waived/Bound Over to GJ:                              Indicted:
               Arraigned:                          Guilty Plea:
      Plea on Information:                       Guilty Verdict:
      Not Guilty Verdict:                            Dismissed:
            Bond Revoked:                     Bond Reinstated:
       Awaiting Probation:                    Probation Revoked:
    Probation Reinstated:               Court Ordered Rehab:
     Returned from Rehab:                      Sent to D.O.C.:
```

```
                         LEE COUNTY SHERIFF'S OFFICE
01/23/2008    09:55:16            INMATE CHARGE SHEET                    PAGE    4
===================================================================================
BOOKING NO: 080000114    INMATE NAME: DAVIS ROBERT LOUIS
===================================================================================
    CHARGE NO:    4  DISPOSITION: OPEN              HOLD: N

ALA STATUTE: CC99-308.00                  # OF COUNTS:    1
    OFFENSE: FTA/FORGERY II                  WARRANT #:
     CASE #:
    BOND AMT: 0                                  FINE:        $0.00
    BAIL AMT:
INIT APPEAR:                           SENTENCE DATE:
RELEASE DTE:
ARREST DATE: 01/23/2008                ARST AGENCY: LCSO
ARST OFFICR: CPT WELCH                     COUNTY:
      COURT:                               JUDGE: DENSON
DEF ATTORNY:                           DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
OFFENSE TYPE:    -
LEGAL STATUS:    -
      NOTES:
      NOTES:
      NOTES:

            Bonded Out:                       Preliminary Hearing:
Waived/Bound Over to GJ:                                 Indicted:
            Arraigned:                               Guilty Plea:
   Plea on Information:                            Guilty Verdict:
     Not Guilty Verdict:                                Dismissed:
           Bond Revoked:                         Bond Reinstated:
      Awaiting Probation:                      Probation Revoked:
   Probation Reinstated:                    Court Ordered Rehab:
      Returned from Rehab:                        Sent to D.O.C.:
```

```
                      LEE COUNTY SHERIFF'S OFFICE
01/23/2008    09:55:16         INMATE CHARGE SHEET                    PAGE     5
================================================================================
BOOKING NO: 080000114    INMATE NAME: DAVIS ROBERT LOUIS
================================================================================
  CHARGE NO:   5  DISPOSITION: OPEN              HOLD: N

ALA STATUTE: CC96-754.00                # OF COUNTS:   1
    OFFENSE: FTA/ATT. CONTSUBS CRIME      WARRANT #:
     CASE #:
   BOND AMT: 0                                 FINE:        $0.00
   BAIL AMT:
INIT APPEAR:                            SENTENCE DATE:
RELEASE DTE:
ARREST DATE: 01/23/2008                  ARST AGENCY: LCSO
ARST OFFICR: CPT WELCH                        COUNTY:
      COURT:                              JUDGE: DENSON
DEF ATTORNY:                            DIST ATTORNEY:
   COMMENTS:
   COMMENTS:
   COMMENTS:
--------------------------------------------------------------------------------
OFFENSE TYPE:     -
LEGAL STATUS:     -
      NOTES:
      NOTES:
      NOTES:

            Bonded Out:                   Preliminary Hearing:
Waived/Bound Over to GJ:                            Indicted:
            Arraigned:                           Guilty Plea:
   Plea on Information:                        Guilty Verdict:
     Not Guilty Verdict:                           Dismissed:
          Bond Revoked:                      Bond Reinstated:
     Awaiting Probation:                   Probation Revoked:
  Probation Reinstated:                  Court Ordered Rehab:
    Returned from Rehab:                     Sent to D.O.C.:
```

# EXHIBIT 4

Lee County Detention Center
Policy & Procedure Manual,
Section 11, "Health Care Services"

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| HEALTH CARE SERVICES | SECTION 11 |
|---|---|
| **Medical Program Objectives** | Title 11.01 |

*Policy*

It is the policy of the Lee County Sheriff's Department that all inmates confined in the Lee County Detention Center are entitled to a level of health care comparable to that available to citizens in the surrounding community which will ensure their physical and emotion well-being.

*Procedure*

1.   Medical care rendered to inmates in the Lee County Detention Center will be delivered under the direction of a licensed health care provider.

2.   No health care personnel or Detention Center officer or other employee of the Sheriff's Department will ever summarily or arbitrarily deny an inmate's reasonable request for medical services.

3.   Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, respectively.

4.   Inmates will be guaranteed access to all diagnostic, laboratory, or other treatment services as directed by the responsible health care authority.

By Order of:

Jay M. Jones, Sheriff

Effective Date:   01-01-2000

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| <u>Consent for Medical Treatment</u> | **Title 11.02** |

<u>*Policy*</u>

It is the policy of the Lee County Sheriff's Department that no inmate be given medical treatment without his authorization unless a life-threatening emergency exists or the inmate is considered mentally incompetent by the court and is in danger of harming himself or others.

<u>*Procedure*</u>

1. During the booking process, each inmate will be requested to sign a medical authorization form.

2. If an inmate refuses to sign a medical authorization form, it will be noted on the form and no medical services, other than emergency life saving procedures, will be offered.

3. No member of the Detention Center staff will explain any risks or consequences involved in any medical procedure to an inmate. The responsibility for this explanation rests solely with the health care provider.

4. Inmates have a right to refuse medical treatment at any time.

5. If an inmate refuses to accept medication or medical treatment, the officer receiving such a refusal should cause the inmate to sign a Medication Refusal Form noting the refusal of medical care. Inmates who refuse medical treatment should be immediately referred to the Detention Center nurse. The consequences of their refusal will be explained to such inmates by the nurse, and the refusal and subsequent procedures documented. If the inmate refuses to sign a Medication Refusal Form, the member of the Detention Center staff receiving the refusal should record that action on the form and follow the same steps as if the inmate had signed. All documentation of refusals of treatment should be made a part of the appropriate inmate's Detention Center file.

By Order of:

Jay M. Jones, Sheriff

Effective Date: _____ 01-01-2000

Reference Forms:      2      Booking Sheet
                      13     Medication Refusal Form

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| **Health Appraisal of Inmates** | **Title 11.03** |

## Policy

It is the policy of the Lee County Sheriff's Department that health appraisal data for each inmate be collected in order to properly classify inmates, promote awareness of and respond to their medical conditions and maintain adequate records of each inmate's health status.

## Procedure

1.  The Booking Officer will conduct a health screening during the booking process and complete a health screening form.

2.  The completed form, after being signed by the inmate, will be placed in the inmate's file.

3.  An inmate incarcerated for seven days or longer will have a Health History taken by a member of the Detention Center staff. The completed form will be placed in the inmate's file.

By Order of:

_____
Jay M. Jones, Sheriff
Effective Date: _____ 01-01-2005

Reference Forms:   2   Booking Sheet
                   9   Health History

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| HEALTH CARE SERVICES | SECTION 11 |
| Inmate Requests for Health Care Services | Title 11.04 |

## Policy

It is the policy of the Lee County Sheriff's Department to allow inmates incarcerated in the Lee County Detention Center to request health care services at any time.

## Procedure

1. Two methods may be utilized by inmates incarcerated in the Lee County Detention Center in order to secure health care services:

   a. <u>Verbal Request</u>: An inmate may make a verbal request for emergency medical attention to any member of the Detention Center staff at any time.

   b. <u>Written Request</u>: An inmate in need of any type of medical attention may complete an Inmate Request form seeking medical attention and forward it to any member of the Detention Center staff.

2. Requests for medical treatment will be accepted by members of the Detention Center staff at any time.

3. When a request for medical treatment is made to a member of the Detention Center staff, the staff member receiving the request will notify the Shift Supervisor of the inmate's request. It is the Shift Supervisor's responsibility to ensure that the inmate's request is attended to in a prompt and proper manner. Any doubt as to whether an actual need exists for medical treatment shall be resolved in favor of the inmate and medical treatment will be offered.

4. Medical requests of an emergency nature will be handled immediately.

5. As part of the booking process, inmates will be informed of the methods by which they may maintain medical treatment during the booking process.

6.    The Detention Center nurse, under the direction of the Detention Center Administrator, is
      charged with the responsibility of obtaining appointments for inmates with physicians in
      order that they may receive medical treatment or for scheduling times when the treating
      physician may attend to health care needs at the Detention Center.

7.    All health care rendered to inmates will, at the doctor's discretion, be given privately to
      the inmate, outside the presence of a Detention Center official.  Should the physician
      request, a Detention Center officer will be present for any and all examinations the
      treating physician deems appropriate.

8.    A Detention Center officer will complete a Record of Medical Examination Form each
      time an inmate utilizes the services of a health care provider not affiliated with the
      Detention Center.  The officer should ensure that the form is reviewed by the provider,
      signed, and returned to the inmate's file.

**By Order of:**

Jay M. Jones, Sheriff

Effective Date:    01-01-2000

Reference Forms:    8    Inmate Request Form
                    11    Record of Medical Examination

# LEE COUNTY
## SHERIFF'S DEPARTMENT

| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| **Emergency Medical Service** | **Title 11.05** |

*Policy*

It is the policy of the Lee County Sheriff's Department to utilize all available emergency medical services within the community on a 24-hour basis for the emergency medical needs of persons incarcerated in the Lee County Detention Center.

*Procedure*

1. During an emergency situation, any member of the Detention Center staff is authorized to notify appropriate emergency medical services and requests treatment for an inmate.

2. During a medical emergency, emergency medical technicians or other appropriate health care providers will be summoned to the Detention Center and, if they or the treating physician deem necessary, the inmate will be transported to the Emergency Room of the Lee County Hospital or other appropriate location for emergency care.

3. An Incident Report and Record of Medical Examination Form should be completed reflecting the circumstances of each such occurrence.

By Order of:

Jay M. Jones, Sheriff
Effective Date: _____01-01-2000_____

Reference Forms:    10    Incident Report
                    11    Record of Medical Examination

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| HEALTH CARE SERVICES | SECTION 11 |
| Non-Emergency Transportation | Title 11.06 |

## *Policy*

It is the policy of the Lee County Sheriff's Department to transport inmates to appropriate medical facilities for non-emergency care in a manner which is safe and secure and does not endanger the inmate's health or medical condition.

## *Procedure*

1.   A Shift Supervisor may, at any time, order that an inmate be transported to a hospital, doctor's office, dentist's office, or other location where health care may be provided on a non-emergency basis.

2.   The Detention Center officer receiving the order to make arrangements for such transportation will contact a Shift Supervisor in order to have a transport officer take the inmate to the proper location.

3.   All medical records and forms within the Detention Center shall accompany the inmate to the health care provider and be made available to the provider.

4.   The name of the inmate transported and the time of leaving from and arriving back at the Detention Center should be noted on the Detention Center log.

By Order of:

_____
Jay M. Jones, Sheriff
Effective Date:  _____01-01-2000_____

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| **Meal and Food Refusals** | **Title 11.07** |

## *Policy*

It is the policy of the Lee County Sheriff's Department that members of the Lee County Detention Center staff monitor the medical and psychological well-being of the inmates incarcerated in the Lee County Detention Center as manifested by the choice of an inmate to refuse food offered to him.

## *Procedure*

1.  Detention Center officers should observe inmates during meal times in order that they may note a change in eating patterns and whether an inmate has refused food due to a hunger strike or has begun skipping meals due to depression or some other reason.

2.  In the event that an inmate does not eat for two consecutive meals, he should be transported to see a physician at the next available appointment time. The inmate should be observed closely until normal eating patterns resume.

3.  The inmate will be seen by a physician thereafter on a schedule established by the physician.

4.  Documentation should be made on an Incident Report of the inmate's original refusal to accept food and each subsequent refusal.

5.  In addition, observations should be recorded on the Incident Report stating whether the inmate is giving food away, receiving food from other inmates, or eating commissary foods instead of normal Detention Center meals. If the inmate is fasting or on a hunger strike, documentation should be made of whether beverages are being consumed.

6.  Mental health authorities should be notified of any such behavior demonstrated by any inmate on the first day that such behavior is noted. Thereafter, the inmate should be seen by the appropriate mental health authorities according to a schedule recommended by those authorities.

By Order of:

Jay M. Jones, Sheriff
Effective Date: _____ 0Y- 01- 2000

Reference Forms:     10     Incident Report

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| HEALTH CARE SERVICES | SECTION 11 |
|---|---|
| **Personal Physician/Dentist,** **Prosthetic Devices, Eye Glasses** | **Title 11.08** |

## _Policy_

It is the policy of the Lee County Sheriff's Department to work closely with the private health care providers of inmates incarcerated in the Lee County Detention Center where possible and to allow persons incarcerated their access to prosthetic devices and eye glasses in order to ensure the inmates' health and dignity and the security of the institution.

## _Procedure_

1. _Personal Physician/Dentist:_  An inmate may request to see his personal physician or dentist by submitting an Inmate Request Form.  The officer who receives such a request will:

   a. Refer the request to the Chief Deputy Sheriff for approval.

   b. If the Chief Deputy Sheriff refuses the request, he will state the reasons for so refusing and transmit these reasons to the inmate.

   c. If the request is approved by the Chief Deputy Sheriff, the Shift Supervisor on duty will contact the inmate's personal health care provider and make necessary arrangements for an appointment.

   d. The usual transportation procedure will be used in order to take the inmate to the health care provider and the inmate's Detention Center medical records will be transported along with the inmate.

   e. The inmate himself is totally responsible for all expenses incurred in the visit to a private health care provider and must have visit cost either prepaid or have the ability to pay on hand at the time of his appointment.  Billing or accounts will not be acceptable.

   f. All indigent inmates will be treated by the health care providers normally utilized by the facility.

g.   The Chief Deputy Sheriff may refuse to allow an inmate access to his personal health care providers for reasons of security, distance of travel, or for any other legitimate penalogical or logistical reason.

2.   *Prosthetic Devices:*   Inmates who are admitted to the Lee County Detention Center wearing or using prosthetic devices, such as artificial limbs, crutches, or canes, will have those devices searched. The ranking officer on duty will be notified when an inmate is admitted or returned from the hospital with a prosthetic device and the officer will take the following steps:

a.   Inspect the device and review the inmate's file to determine whether or not the device itself or the inmate's history and behavior with the device will pose any security risk. If so, he will consult with the facility physician in order to determine the inmate's medical need for the device. If the physician orders that the device remain with the inmate and/or the inmate be placed in administrative segregation, that order will be followed. If the physician decides that the inmate's health will not be jeopardized by the removal of the device during confinement, the device will be removed, tagged, and stored. The ranking officer will then determine whether administrative segregation is necessary.

b.   Devices will be provided as deemed necessary to maintain health.

3.   *Eye Glasses:*   An inmate who requests eye glasses will:

a.   See the facility physician at the next available appointment time to have his need evaluated.

b.   If ordered by the facility physician, the inmate will be transported to an optometrist.

c.   The inmate will be billed for the optometric examination and eyeglasses.  If the inmate is indigent, he will be supplied information regarding the Lions Club fund for indigent people.  The inmate will be responsible for contacting the Lions Club.

d.   If an inmate's eyeglasses are accidentally broken during regular Detention Center activity, an Incident Report will be written immediately by the officer participating in or discovering the incident.  This Incident Report will be forwarded to the Chief Deputy Sheriff.  The report will be reviewed and the decision to repair the eyeglasses will be made on an individual basis.

e.   Replacement or repair of eyeglasses that are broken intentionally or during an altercation will be the responsibility of the inmate.

**By Order of:**

Jay M. Jones, Sheriff
Effective Date:   _01 - 01 - 2003_

Reference Forms:      8     Inmate Request Form
                      10    Incident Report

# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| **Pharmaceutical Management** | **Title 11.09** |

## Policy

It is the policy of the Lee County Sheriff's Department that persons incarcerated in the Lee County Detention Center be entitled to safe dispensation and administration of prescription and non-prescription medication.

## Procedure

A. *Obtaining Medication*

1. If an inmate is admitted to the Detention Center who states he is receiving prescribed medication but does not have that medication with him, he will be given the opportunity to have that medication brought to the Detention Center by a friend or family member.

2. If an inmate being booked into the Detention Center states that he is receiving prescription medication but does not have his supply of medication with him or cannot obtain it from outside sources, the inmate's health care provider will be contacted by the Shift Supervisor in order to obtain a replacement prescription. If advised to do so by the health care provider, the inmate will be taken to the facility's health care provider in order to be examined.

3. All medication which is prescribed for an inmate by his health care provider during the term of the inmate's incarceration will be obtained by the Sheriff's Department and distributed to the inmate according to his doctor's directions.

B. *Medication Receipt*

1. Upon receiving non-prescription medication, the officer purchasing that medication will deliver the invoice and/or receipt to the Shift Supervisor who will file it appropriately.

2. For all prescription medications, a copy of the prescription label and a receipt or invoice from the pharmacy or a copy of these documents will be placed in the inmate's file for whom the prescription was ordered.

C.    _Storage_

1.    All medications, both prescription and non-prescription, as well as any dispensing devices, such as syringes, will be stored in a locked area of the Detention Center.

2.    The Shift Supervisor shall be the only Detention Center officer having access to the medication locker. Keys to the locker must be kept on the person of the Shift Supervisor during his or her shift and transferred to the oncoming Shift Supervisor or senior officer on duty for the next shift.

D.    _Distribution of Medication_

1.    No medication should be dispensed from any container that is not legibly labeled with a proper pharmaceutical label as set out in Procedure B set out above.

2.    No medication should be changed from one bottle to another.

3.    No medication should be left with an inmate. The Detention Center officer distributing the medication should observe ingestion.

4.    When distributing medications dispensed in pill or capsule form, the Detention Center officer should require the inmate to consume at least four ounces of water along with the medication to ensure ingestion. If the Detention Center officer is in doubt as to whether the inmate has actually ingested the medication, he should require the inmate to speak to him and to raise his tongue in order that the Detention Center officer may observe the inside of the inmate's mouth.

5.    A record should be kept reflecting the type of medication distributed to an inmate, the time the inmate received the medication, the initials of the Detention Center official dispensing the medication and the inmate's initials or signature acknowledging receipt. Such records should be placed in the inmate's Detention Center file. Non-prescription medication should be made available to inmates upon request and should be dispensed in the same manner as prescription medication, including recording dispensation on a medication log.

6.    The taking of medications by an inmate is strictly voluntary. Any inmate has the right to refuse to take medication for any reason and this refusal will be respected. When an inmate refuses to take a scheduled medication, it is to be noted on the medication log

Title 11.09
Pharmaceutical Management
Page 3 of 3 Pages

sheet and an Incident Report form should be completed by the officer in charge who should list the reasons for the inmate's refusal, sign the form himself and have the inmate sign the form or note that the inmate refused to sign the form.

7.   Under no circumstances should any inmate, whether a trusty or otherwise, be allowed to dispense medication of any kind to any other inmate at any time.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** _____ 01 - 01 - 2000

Reference Forms:        9     Incident Report
                       12     Medication Log
                       13     Medication Refusal Report

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| HEALTH CARE SERVICES | SECTION 11 |
| Narcotic Withdrawal | Title 11.10 |

## Policy

It is the policy of the Lee County Sheriff's Department that the staff of the Lee County Detention Center observe inmates for signs of narcotic withdrawal in order to obtain appropriate treatment for those inmates.

## Procedure

1. All inmates who, either by history assessment or by behavior, are noted to have heavy and/or prolonged drug use shall be observed for signs and symptoms of narcotic withdrawal. Detention Center officials should seek to observe and note the following conditions:

   a. During the first 8 to 16 hours, no symptoms may be present.

   b. During the next 16 to 48 hours, inmates may display symptoms such as yawning, sweating, insomnia, dilated pupils, goose flesh, twitching of the muscles, or severe aches in their backs, legs, or abdomens.

   c. During the next 36 hours, nausea, vomiting and/or diarrhea may be noted.

   d. All the above symptoms should peak about 48 to 72 hours and decline over the next 7 to 10 days.

2. Should any inmate be observed experiencing the above symptoms, a physician should be contacted for orders and an Incident Report should be completed.

By Order of:

Jay M. Jones, Sheriff
Effective Date: _____01-01-2000_____

Reference Form:     10     Incident Report

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| **Dental Care** | **Title 11.11** |

## *Policy*

It is the policy of the Lee County Sheriff's Department that inasmuch as dental health directly affects an individual's total health and medical status, inmates of the Lee County Detention Center shall receive the dental care deemed necessary by the facility physician under the direction of a dentist licensed to practice in the State of Alabama.

## *Procedure*

A.   *Regular Dental Care*

1.   All inmates who are scheduled to remain in the Lee County Detention Center at least 7 days or who do remain there for a period of time in excess of 7 days shall have a Health History Form completed.

2.   All inmates will be issued a toothbrush and toothpaste upon admission.

B.   *Emergency/Urgent Treatment*

1.   Dental care is available for those inmates who experience an acute dental problem such as severe pain, infection, trauma, or broken prosthesis necessary for eating. Depending on the urgency of the situation, an appointment will be made for the inmate at the next available time with the facility physician or he will be transported to the dentist for an emergency visit.

2.   Inmates may also be transported to a dentist for treatment upon the order of the facility physician at any time.

3.   Dental health matters involving clinical judgments are the sole province of the responsible physician.

4.    A Record of Medical Examination Form should be completed for each dental treatment.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** _____ 07- 01- 2000_

| Reference Forms: | 9 | Health History Form |
|---|---|---|
| | 11 | Record of Medical Examination |

# LEE COUNTY SHERIFF'S DEPARTMENT

| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| **Mental Health Care Services** | **Title 11.12** |

## Policy

It is the policy of the Lee County Sheriff's Department that mental health care services be made available to persons incarcerated in the Lee County Detention Center.

## Procedure

1.  All mental health care services made available to inmates at the Lee County Detention Center will be coordinated through the Lee County Mental Health Department.

2.  Services which may be provided include, but are not limited to:

    a.   initial intake interview;
    b.   crisis counseling;
    c.   individual counseling;
    d.   group counseling;
    e.   community referrals; and
    f.   drug and alcohol counseling and referrals.

3.  Services may be obtained by:

    a.   inmate request;
    b.   referral through health services screening processes;
    c.   referral from law enforcement or Detention Center officers; and
    d.   referral from an outside therapist or other agency.

4.  Through the intake interview, counseling sessions, and from information shared among the Detention Center staff, Detention Center officers shall seek to identify inmates who are in need of mental health services. Thereafter, they may refer the inmate to the Lee County Mental Health Department, or another facility, such as Alcoholics Anonymous, veterans groups, or other appropriate organizations who may counsel with the inmate at the Detention Center. When inmates would benefit from the services which may not be provided at the Detention Center, the Shift Supervisor may make referrals to other agencies.

5.  Members of the Detention Center staff shall encourage inmates to attend in-house programs and to contact any service agency they believe would benefit them. When possible, members of the staff may assist inmates in contacting outside agencies.

6.  The Detention Center staff should encourage visits between representatives of social service agencies and inmates.

7.  Members of the Detention Center staff should also encourage inmates to continue using community service organizations after release from the Lee County Detention Center.

8.  A Record of Medical Examination Form should be completed for every visit by or to a mental health care service or professional.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**    01-01-2000

**Reference Form:**    **11**    **Record of Medical Examination**

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| **Medical Records** | **Title 11.13** |

## Policy

It is the policy of the Lee County Sheriff's Department that, at any time an inmate incarcerated in the Lee County Detention Center receives medical treatment from a health care provider, a record be made of the rendering of treatment and other pertinent information and that this be placed in the inmate's Detention Center file

## Procedure

1. *Request Forms:* All inmate request forms submitted by inmates seeking to have medical services rendered to them will, when completed, be made part of the inmate's Detention Center file.

2. *Physician's Orders:* All medical treatment forms and orders received from a physician or other health care provider treating an inmate shall be made a part of the inmate's Detention Center file.

3. *Transportation of Records:* At any time an inmate is transported to a health care provider, the officer transporting the inmate will cause his Detention Center medical file to be delivered to the health care provider for review.

4. *Confidentiality of Medical Records:* All medical records files and other information regarding an inmate's health are to be kept strictly confidential and will not be released without written permission of the inmate, except to authorized providers and staff.

   a. Only the Sheriff, Chief Deputy, Sheriff, Corrections Administrator, Assistant Corrections Administrator, and Detention Center health care providers are authorized to have access to inmate medical records and the information contained therein.

   b. Information in medical records is available to authorized staff only on a "need to know" basis.

   c. Any staff member who becomes aware of specific details of an inmate's health

status will not discuss that inmate's health condition with any relative of the inmate, any member of the public, or any other staff member, except those authorized under #4.a above.

d.    Corrections officers who have an inmate's medical record in their possession for any reason (e.g., transporting the inmate to a medical appointment) are prohibited from reading or otherwise accessing the information contained within the record.

e.    Release of inmate medical records or other health information will follow the procedures outlined in policy Title 11.16.

f.    Inmate medical records will be kept in locked storage with only authorized staff having access to these files.

5.    *Transfer of Records:*  An inmate records or a copy thereof may be transferred with him when he is transported to another facility if the inmate has signed a release of information form.

6.    *Records Retention:*  Medical records will be maintained in active Detention Center files for a period of ten years from the time the inmate is released from the Detention Center.

**By Order of:**

Jay M. Jones, Sheriff

Effective Date:    01-01-2000

Reference Forms:    2    Booking Sheet
                    8    Inmate Request Form
                    11    Record of Medical Examination
                    12    Medication Log
                    13    Medication Refusal Report

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| HEALTH CARE SERVICES | SECTION 11 |
|---|---|
| AIDS Inmates | Title 11.14 |

## Policy

It is the policy of the Lee County Sheriff's Department to identify and make treatment available for those inmates who are determined to be AIDS carriers in a professional and confidential manner and to take precautions in seeking to protect other inmates and members of the Detention Center staff from exposure to the virus.

## Procedure

A.   *Screening*

1.   Members of the Detention Center staff should be aware of the risk of transmission of the HIV virus when they are exposed to blood, bodily fluids, vaginal secretions, semen, or bodily tissues from a person carrying the virus. Exposure may also occur when cleaning up vomit or in treating an injury.

2.   An in-depth screening by a licensed physician should take place if, during the initial medical screening during booking, the inmate reveals that he has

    a.   been an intravenous drug user;
    b.   experienced recent weight loss;
    c.   experienced night sweats;
    d.   suffered from chronic diarrhea;
    e.   suffered from swollen lymph nodes;
    f.   experienced extreme fatigue;
    g.   has a persistent fever;
    h.   suffered from recurrent pneumonia; or
    i.   has purple skin lesions present.

3.   Similarly, inmates should receive additional health screening who belong to groups which are at a high risk for HIV infection. These groups include:

    a.   homosexual and bisexual males;
    b.   intravenous drug users;

c.    transfusion recipients;
d.    inmates with a history of hepatitis;
e.    hemophiliacs;
f.    Haitian immigrants; or
g.    heterosexuals with a partner in one of the above risk groups.

B.    *Testing*

1.    An inmate may request an HIV test if he states that he is an HIV carrier.

2.    HIV tests will be made available to members of the Detention Center staff upon request.

3.    Inmates sentenced to 90 days or more will be given an HIV test before he is released from the Detention Center.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**    01-01-2000

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| **Suicide Prevention** | **Title 11.15** |

**Policy**

It is the policy of the Lee County Sheriff's Department to utilize all resources available to prevent persons incarcerated in the Lee County Detention Center from committing suicide.

**Procedure**

A. *General*

1. Members of the Detention Center staff should be cognizant of the following strong indicators that a person may be potentially suicidal:

   a. recent attempt(s) or history of suicide attempts;
   b. suicide threats and/or specific plan; or
   c. writing a suicide note and/or a will.
   d. displayed feelings of despair, hopelessness, helplessness, depression or exhaustion;
   e. displayed agitation, tension, or anxiety;
   f. displayed rage, anger, hostility, or revenge; or

2. Members of the Detention Center staff should also be aware of secondary indicators of suicidal tendencies such as:

   a. overly emotional response to incarceration;
   b. crying or tearful behavior;
   c. sudden change in behavior;
   d. experience of a sudden loss of a loved one, job or material possession;
   e. receipt of unexpected legal or personal news;
   f. displayed guilt, shame, or embarrassment;
   g. alcohol and/or drug withdrawal.

3.  Members of the Detention Center staff should be aware that groups at high risk for suicide include:

    a.  first time sexual assault offenders;

    b.  younger inmates who are first time offenders; and

    c.  persons experiencing homophobic reactions (excessive fear of homosexuals and/or homosexual feelings).

4.  When an arrestee is brought to the Lee County Detention Center, the Booking Officer should complete a screening form which includes asking the arrestee if he has a history of suicide attempts. Positive response and/or unusual behavior should be immediately brought to the attention of the Detention Center supervisor.

5.  Persons giving a positive response when asked about suicide attempts should be referred to a physician and/or appropriate mental health authorities as soon as possible after incarceration.

6.  If, at any time, an inmate is detected to be a suicide risk, proper mental health authorities should be notified immediately and asked to do a face-to-face evaluation of the inmate as soon as possible. Until such an evaluation is made, members of the Detention Center staff should closely observe the inmate.

7.  Any member of the Detention Center staff recognizing an inmate whose behavior indicates emotional instability should complete an Incident Report describing the behavior of the inmate and forward it to the Shift Supervisor and Chief Deputy Sheriff.

B.  *Housing*

1.  When a person has been determined to be imminent danger to himself, he should be housed, if possible, in a cell with other inmates. He should be closely monitored by members of the Detention Center staff and, if appropriate, a trusty inmate should be assigned to observe him.

2.  If necessary, an inmate displaying suicidal tendencies may be housed in an administrative segregation cell. If so, he should be closely monitored by a member of the Detention Center staff and/or, if appropriate, a trusty. If a trusty is utilized, a member of the

Detention Center staff should observe the inmate's behavior at least once every 15 minutes.

3.  An inmate being housed alone due to the fact that he has been deemed to be a suicide risk should have all plastic cups, glasses, and other items with which he might harm himself removed from his cell. He should be issued only:

    a.  one set of clothing;

    b.  one set of bedding;

    c.  books authorized by the Shift Supervisor;

    d.  hygienic items under supervision only and for only so long as needed to complete hygiene tasks; and

    e.  eye glasses must be given to a member of the Detention Center staff during night lockdown.

4.  No inmate who has been deemed to be a suicide risk may participate in Detention Center programs. They may have access to the commissary for items approved by the Chief Deputy Sheriff and may receive approved books.

5.  Members of the Detention Center staff should document the onset, continuance, and removal of a watch of an inmate who is potentially suicidal. They should notify their Shift Supervisor of their observations in order that arrangements may be made for necessary staffing.

6.  The behavior of all suicidal inmates should be documented on an observation log every 15 minutes or more often if the inmate's behavior indicates more frequent documentation. This documentation should include a summary of activities, observations, changes, or other pertinent information.

7.  Evaluations of the inmate's health and/or recovery progress should be made at the direction of the appropriate mental health care authority.

8.  All directions from the appropriate mental health authority concerning the behavior of a suicidal inmate will be followed by members of the Detention Center staff.

C.    *Training*

All members of the Detention Center staff will, as a part of their regular training program receive training designed to assist in preventing suicides and recognizing behavior incident to inmates susceptible to suicide.


**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** _____ 01-01-2000 _____

**Reference Forms**    2    **Booking Sheet**
                       10   **Incident Report**
                       15   **Observation Log**

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| **Release of Medical Records** | **Title 11.16** |

## *Policy*

It is the policy of the Lee County Sheriff's Department to release medical records for persons incarcerated in the Lee County Detention Center in accordance with state and federal laws.

## *Procedure*

1. No medical records of any type will be released without a written Medical Information Release signed by the inmate.

2. Only information specifically requested will be released.

3. Information may also be released when requested by a valid court order.

4. A signed copy of any Medical Information Release received from an inmate will be placed in the individual's file and become part of his permanent record.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** ___01-01-2000___

| Reference Form: | 14 | Consent to Obtain Medical Records |
|---|---|---|
| | 17 | Authorization for Release of Information |

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **HEALTH CARE SERVICES** | **SECTION 11** |
| <u>**Inmate Co-Payment for Medical Services**</u> | **Title 11.17** |

### *Policy*

Sick call is conducted on a scheduled basis by a registered nurse and is available to all inmates. All inmates are required to pay a fee for non-emergency treatment. Inmates will not be denied medical treatment. When an inmate has insufficient funds in his/her trust account to pay for the assessed fee(s), a lien in the amount of the fee(s) will be placed on the inmate's trust account against future monies which may be received.

### *Procedure*

1.  Costs for non-emergency treatment will be charged to the inmate as follows:

    | | | | |
    |---|---|---|---|
    | Sick-Call visit | $10.00 | Dentist visit | $10.00 |
    | Physician visit | $10.00 | Prescription fee | $ 5.00 |
    | Non-reimbursed laboratory fee | $ 5.00 | | |

2.  At the conclusion of each sick-call visit, the nurse will complete a charge slip, the inmate will sign the slip and receive a copy.

3.  The remaining Medical Charge Forms are given to the booking officer on duty when sick call is completed.

4.  The booking officer submits one copy of the Medical Charge Form to the Commissary Clerk for payment from the inmate account.

5.  One copy of the Medical Charge Form is placed in the inmate's medical file.

6.  Payment for medical treatments will be payable to the Lee County Commission.

By Order of:

_____
Jay M. Jones, Sheriff
Effective Date: _____ 01-01-2000
Reference Form:  33  Medical Charge Slip
                 34  Medical charge Acknowledgment Form

# EXHIBIT 5

Lee County Detention Center
Policy & Procedure Manual,
Section 12, "Food Services"

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **FOOD SERVICES** | **SECTION 12** |
| <u>Menu Preparation</u> | **Title 12.01** |

### <u>Policy</u>

It is the policy of the Lee County Sheriff's Department that inmates incarcerated in the Lee County Detention Center be provided with a nutritionally adequate diet.

### <u>Procedure</u>

1.  In order to provide a nutritionally balanced diet to inmates in the Lee County Detention Center, menus will be prepared three weeks in advanced and reviewed by a registered dietician.

2.  After service of each meal, the Detention Center dietician shall verify by his signature on the menu, that the food service staff has adhered to the approved menu with the exception of documented substitutions.

3.  The food service staff shall document all substitutions in or modification of menus. The food service supervisor will make sure that meals which have been modified or items which have been substituted are equal in nutritional values to those originally planned for.

4.  Under no circumstances may any meals be modified for disciplinary purposes or as a reward for good inmate behavior.

5.  Inmates will be served three meals each day at regularly scheduled times. At least two of these meals will be hot and there shall be no more than 14 hours between the evening meal and breakfast.

6.  All meals will be served at the appropriate temperature as soon as possible after they are prepared.

7.  Consideration will be given to texture, color, flavor and appearance in food preparation.

8.  Unless exceptional circumstances warrant, all meals served to inmates will be prepared in the kitchen at the Lee County Detention Center under the supervision of the food service staff and the Detention Center dietician.


**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** _____ 01 - 01 - 2000

**Reference Form:**    18    **Detention Center Menu Report**

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| FOOD SERVICES | SECTION 12 |
| Special Diets | Title 12.02 |

## Policy

It is the policy of the Lee County Sheriff's Department that the Lee County Detention Center provide inmates incarcerated therein special diets when they are prescribed by medical personnel.

## Definition

*Special Diet:* Special meals or food items prepared for an inmate according to his medical needs or religious beliefs.

## Procedure

1. If an inmate asks for a special diet when he is booked, the booking officer will document this on the booking sheet and, if appropriate, a Health History form. The Detention Center dietician (corrections officer) will, on that shift or the next shift which he works, discuss the religious or medical dietary needs of the inmate with him.

2. If the inmate requests a special diet for medical dietary needs, an appointment will be made for him with the Detention Center physician who will be responsible for the ultimate decision in such a matter and make recommendations to the Detention Center staff accordingly.

3. If it is determined that an inmate needs a special medical diet, the diet will be forwarded to the attention of the dietician (corrections officer) at the Detention Center.

4. Special diets will be kept simple and as similar as possible to the meals served to other inmates.

5.    All special diets should be nutritionally adequate and meet the same standards as meals served to the general inmate population.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**    01-01-2000

Reference Forms:    2    Booking Sheet
9    Health History
18    Detention Center Menu Report

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| FOOD SERVICES | SECTION 12 |
| **Health, Safety and Sanitation** | Title 12.03 |

*Policy*

It is the policy of the Lee County Sheriff's Department that adequate health protection be provided at the Lee County Detention Center for all members of the Detention Center staff and inmates by requiring persons working in the food service area to meet established health and sanitation standards.

*Procedure*

A.   *General*

1.   Inmate food service personnel will be examined by the facility physician or Health Department and given a tuberculosis test before they begin work.

2.   The general health of all food service personnel, including inmates, will be monitored daily by the dietician (corrections officer) in order to ensure that they are free from illness which may be transmittable by food.

3.   All persons working in the food service area will be monitored for cleanliness by the Detention Center dietician (Corrections Officer) or, in his/her absence, the Shift Supervisor.

4.   All persons working in the food service area will be instructed to wash their hands upon returning to work after using toilet facilities.

5.   All persons working in the food service area will wear hair restraints.

6.   Kitchen trusties will be required to shower at least once each day or, if necessary, more often, and to have clean laundry daily.

7.   The dietician shall be charged with the responsibility of checking the refrigerator, freezer, and dish water temperatures daily. This inspection will be logged on the Detention Center log.

8.   The chief cook will be charged with cleaning of all kitchen areas on an ongoing basis.

9.   The Chief Deputy Sheriff or Captain will inspect all food service areas weekly, including dining and food preparation areas and equipment to make sure they meet safety and sanitation standards.  These inspections will be documented on the Detention Center log.

10.  Members of the Detention Center staff will cooperate with the Alabama Department of Public Health, the Alabama Department of Corrections and any other agency inspecting the Detention Center and/or the Detention Center's kitchen.

11.  Any problems noted during the inspection of the kitchen or food service areas will, if possible, be immediately remedied.

B.   *Sanitation Procedures*

1.   The Detention Center cook will inspect the food service areas after each meal to ensure that the areas are clean and sanitary.

2.   The Detention Center cook will inspect and ensure that all food service equipment is cleaned after each use.

3.   The Detention Center cook will inspect all utensils, trays, and cups to ensure that they are washed and sterilized after each use.

4.   The dietician (corrections officer), as above, will ensure that the water temperature of the sterilizer is correct and in compliance with local health regulations.

5.   The Detention Center cook will ensure that the kitchen floors are swept and mopped after each meal has been served.

6.   The Detention Center cook will ensure that all refrigerators and freezers are clean and frost free.

7.   The Detention Center cook will ensure that counter tops and work areas are cleaned after each use.

8.   The Detention Center cook will ensure that a thorough cleaning of all food service and storage areas takes place at least once each week.

9.   The Detention Center cook will ensure that all walls, exposed piping, fans, and lights are

cleaned as needed.

10.    The second Shift Supervisor shall supervise the Detention Center cook in all the above operations.

11.    No smoking will be permitted in the Detention Center kitchen.

C.    _Food Preparation_

1.    The Detention Center cook will ensure that all meals are prepared in clean and sanitary conditions.

2.    The Detention Center will serve only government inspected meats and poultry.

3.    No home canned or preserved foods will be served.

4.    All raw foods to be served will be washed and cleaned thoroughly in safe water before being served.

5.    The second Shift Supervisor will ensure that all aspects of this policy are strictly adhered to.

D.    _Feeding Procedures_

1.    The Detention Center cook will notify the Detention Center staff as soon as meals are ready to be served.

2.    A member of the Detention Center staff will observe the service of food in order to ensure that the portions of food on each tray in order to prevent favoritism.

3.    A member of the Detention Center staff will designate when assigned trusties will begin to deliver trays.

4.    As soon as the responsible Detention Center staff member has determined that all inmates have completed their meals, trusties, under direction of the Detention Center staff, will pick up all trays and count them as they are returned to the kitchen.

5.    The Captain, Shift Supervisor, and dietician will implement disciplinary procedures

against any inmates who attempt to retain trays or pilfer Detention Center food.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** ___07·01·2000___

Reference Forms:      10     Incident Report
                              28     Disciplinary Report
                              29     Notification of Charges

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| FOOD SERVICES | SECTION 12 |
| <u>Meal Records</u> | Title 12.04 |

*Policy*

It is the policy of the Lee County Sheriff's Department to keep accurate records of all meals served at the Lee County Detention Center.

*Procedure*

1.   Menus, with documentation of any substitutions and modifications, will be filed in the dietician's office.

2.   The number of meals served to both staff and inmates shall be documented on the Detention Center log.

By Order of:

Jay M. Jones, Sheriff
Effective Date:     01-01-2008

Reference Form:      18    Detention Center Menu Report

# EXHIBIT 6

Lee County Detention Center
Policy & Procedure Manual,
Section 9, "Physical Plant"

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **PHYSICAL PLANT** | **SECTION 9** |
| <u>Environmental Conditions</u> | **Title 9.01** |

### *Policy*

It is the policy of the Lee County Sheriff's Department to maintain a healthy environment within the Lee County Detention Center for the benefit of both inmates and the Detention Center staff.

### *Procedure*

1.  The Chief Deputy Sheriff, Captain, Lieutenant, and Shift Supervisors are charged with the responsibility of ensuring that all ventilation and heating units in the Detention Center are functioning properly and are circulating a sufficient amount of air.

2.  All members of the Detention Center staff are charged with the responsibility of taking all measures within their control to ensure that the proper temperature is maintained throughout the Detention Center at all times.

3.  Sufficient lighting to ensure the safety of all persons shall be provided at all times. Lights or fixtures which become damaged, broken, or burned out will be replaced.

4.  Noise levels in the Detention Center should be maintained at an appropriate level at all times.

5.  Plumbing will be maintained in order to ensure that both hot and cold running water are available to all inmates.

6.  Mechanical failures of the heating, lighting, or locking systems will be reported immediately to the senior officer on duty at the Detention Center. Detention Center personnel will take immediate action to safeguard inmates in the Detention Center until the problem or failure is corrected.

7.  The Chief Deputy Sheriff and Fire Safety Officer will, as needed, verify or have proper tests conducted to verify that the procedures addressed above are complied with.

8.  All employees of the Detention Center are charged with the responsibility of continuously monitoring the above environmental conditions and reporting any problem to the senior officer present immediately upon learning of the problem.

By Order of:

Jay M. Jones, Sheriff
Effective Date: 01 - 01 - 2000

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **PHYSICAL PLANT** | SECTION 9 |
| <u>**Vermin and Pest Control**</u> | Title 9.02 |

<u>*Policy*</u>

It is the policy of the Lee County Sheriff's Department to maintain a high level of pest and vermin control within the Lee County Detention Center in order to ensure a minimum level of pest infestation.

<u>*Procedure*</u>

1. The Chief Deputy Sheriff will ensure that all areas of the Lee County Detention Center are sprayed with insecticide at least once each month. A licensed pest control service will be contracted to provide control for vermin and insects. Detention Center personnel will utilize this service to the maximum extent allowed in order to prevent and control the infestation of pests and vermin.

2. Shift Supervisors will ensure that all appropriate areas of the Detention Center are treated with any additional insecticides or powders deemed necessary by the Chief Deputy Sheriff at the Chief Deputy Sheriff's direction.

3. All Shift Supervisors will, when conducting daily housekeeping inspections, look for possible or potential vermin or pest problems.

4. In order to prevent vermin and pest problems, members of the Detention Center staff will instruct inmates that they are not allowed to keep food from the canteen in their living areas.

5. The Captain, Lieutenant, Sergeant, or Shift Supervisor will log in the daily Detention Center log all extermination activities.

By Order of:

Jay M. Jones, Sheriff
Effective Date: _01-01-2000_

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **PHYSICAL PLANT** | **SECTION 9** |
| Detention Center Maintenance | **Title 9.03** |

## Policy

It is the policy of the Lee County Sheriff's Department that the Lee County Detention Center accomplish scheduled maintenance in order to ensure that the Detention Center facility and equipment are kept in good repair.

## Procedure

A.    **Standards**

1.    Living areas of the Detention Center should be kept free of litter, dust, mold, mildew, corrosion, vermin, or any other objectionable or unhealthy condition.

2.    Plumbing should be maintained in a serviceable condition, be free from leakage, have enough pressure to accomplish the tasks intended, and water should be the appropriate temperature.

3.    Light fixtures should have appropriate and serviceable bulbs and have no exposed wiring.

B.    **Inspections**

1.    The Chief Deputy Sheriff, Captain, Lieutenant, and Shift Supervisors, when accomplishing housekeeping inspections, should check to be sure that all lights, electrical outlets and plumbing fixtures are in proper working order and good repair.

2.    All maintenance problems should be noted on the daily Detention Center log and the Captain should be notified in order that the situation may be corrected.

3.    The Captain, upon becoming aware of a situation in the Detention Center requiring routine maintenance, will make, or arrange to have made, necessary repairs.

4.    The Detention Center staff on duty will note in the daily Detention Center log book any
time maintenance personnel are in the Detention Center and the duties they accomplished.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**    01-01-2000

**Reference Forms:**    19    Maintenance Request Form
22    Detention Center Inspection Report

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **PHYSICAL PLANT** | **SECTION 9** |
| <u>**Control of Flammable, Toxic, and Caustic Substances**</u> | **Title 9.04** |

## *Policy*

It is the policy of the Lee County Sheriff's Department that Detention Center personnel exercise control over procurement, storage, inventory, and the use of all substances within the Lee County Detention Center which are classified as flammable, toxic, or caustic in order to prevent injury to inmates, Detention Center personnel, or the public.

## *Definitions*

1.  <u>Flammable</u>:  Any product which may ignite or explode when contacted with flame, sparks, or exposure to excessive heat.

2.  <u>Toxic</u>:  Any product which is poisonous and may, if ingested, inhaled, or absorbed, destroy the life or health of plants, animals, or humans.

3.  <u>Caustic</u>:  Any product which will corrode or burn persons or objects by chemical action upon contact.

4.  <u>Hazardous Material</u>:  Any flammable, caustic, or toxic material.

## *Procedure*

1.  Hazardous materials may be procured only by the Chief Deputy Sheriff or his designee. All persons seeking to have these items procured for use in the Detention Center shall submit requests to the Chief Deputy Sheriff in order to do so. As new products become available, they should be evaluated in order to replace hazardous materials with those less likely to be abused in a detention setting.

2.  Inmates using hazardous materials in janitorial, laundry, or maintenance are to be given only a supply large enough to accomplish the task at hand, should use the materials for the stated purpose only, and should use the materials under the supervision of a Detention Center officer.

3.  Flammable materials which are used within the facility, including gasoline, oil-based paints, thinner, alcohol, and aerosols, should be stored in an area of the Detention Center

which is locked and to which inmates have no access.

4.  Toxic materials used within the Detention Center facility, including bleach, dish and laundry detergents, mop soap, and glass cleaners, should be stored in appropriate locations. Access to these supplies should be controlled by the staff supervising their use.

5.  All pharmaceutical supplies should be kept in a locked area.

6.  Caustic materials used in the facility, including floor stripper and drain cleaners, should be locked in their appropriate storage areas. Access to these supplies should be controlled by the staff supervising their use.

7.  The Detention Center staff must always be aware of the potential danger of misuse or abuse of hazardous materials.

8.  The Detention Center staff in charge of inmates using hazardous substances will control the access to and use of those substances.

9.  All hazardous materials are to be stored in and used from only the container labeled to contain that material.

10. Detention Center officers are to have complete control to access to all locked supply areas and shall supervise any inmate taking supplies from them.


By Order of:

Jay M. Jones, Sheriff
Effective Date:    01-01-2000

# EXHIBIT 7

Lee County Detention Center
Policy & Procedure Manual,
Section 13, "Sanitation and Clothing"

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| SANITATION AND CLOTHING | SECTION 13 |
| Sanitation | Title 13.01 |

## Policy

It is the policy of the Lee County Sheriff's Department that the staff of the Lee County Detention Center maintain strict sanitation practices which will provide persons incarcerated in the Detention Center and members of the Detention Center staff with a healthy and sanitary living and working environment.

## Procedure

1. The Lee County Detention Center will be cleaned every day. Areas to be cleaned will include cells, floors, walls, sinks, toilets, and showers.

2. Inmates serving sentences will be required to do such work as the Sheriff or Chief Deputy Sheriff reasonable and to maintain sanitary conditions throughout the Detention Center. Use of such inmate labor is and will be governed by applicable local, state, and federal law.

3. All staff members are responsible for the cleanliness of their designated work areas at all times. All inmate cleaning activities are to be supervised by a staff member or members to ensure that the work is thorough and complete.

4. The Chief Deputy Sheriff will inspect all areas of the Detention Center at least twice each week to ensure that proper sanitation practices are being carried out by the Detention Center staff and inmates. The Administrator will do a complete walk through of the facility, checking that all areas of the facility are clean and orderly, that lighting and ventilation equipment are working properly, and that no health or safety hazards exist.

5. The Chief Deputy Sheriff or his designee will assist all outside agencies responsible for inspecting the Lee County Detention Center to identify possible sanitation and health problems at the Detention Center.

6.  The Chief Deputy Sheriff will review all inspection reports by outside agencies and implement a plan of action to correct all health and sanitation deficiencies noted on such reports within three months of the time such a report is received by the Sheriff's Department.

7.  Each Shift Supervisor is responsible for ensuring that the Detention Center is cleaned during his or her shift as directed by the Chief Deputy Sheriff. The Shift Supervisor will inspect all areas of the Detention Center during and after cleanup in order to ensure that all tasks have been completed.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** _____ 01-01-2008

**Reference Form:**    22    **Detention Center Inspection Report**

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| SANITATION AND CLOTHING | SECTION 13 |
| **Cleaning Supplies** | Title 13.02 |

## *Policy*

It is the policy of the Lee County Sheriff's Department that at least a 15-day supply of materials and equipment necessary to sustain daily housekeeping practices be maintained within the confines of the Lee County Detention Center.

## *Procedure*

1.  An officer of the Detention Center's first shift shall be designated the Detention Center Supply Officer and will be responsible for inventorying all cleaning supplies and equipment stored in the Detention Center at least once each week.

2.  The Detention Center Supply Officer will make all necessary arrangements to purchase any and all cleaning supplies needed.

3.  All cleaning supplies received at the Lee County Detention Center will be stored in an appropriate storage room at the Detention Center.

4.  All flammable or toxic cleaning materials will be stored in a locked area of the Detention Center to which inmates are given access only under the direct supervisor of a member of the Detention Center staff.

By Order of:

_____
Jay M. Jones, Sheriff
Effective Date: _____01-01-2008_____

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| SANITATION AND CLOTHING | SECTION 13 |
| Housekeeping Plan | Title 13.03 |

## Policy

It is the policy of the Lee County Sheriff's Department to maintain a housekeeping plan at the Lee County Detention Center in order that all areas of the Detention Center may be kept clean and sanitary.

## Procedure

A.   *General Housekeeping Plans*

1.   The Shift Supervisor for the first shift will implement daily housekeeping practices to ensure that all areas of the Detention Center are kept clean and sanitary.

2.   The Shift Supervisor for the second shift will implement daily housekeeping practices after the evening meal to ensure that all areas of the Detention Center are kept clean and sanitary.

3.   The Shift Supervisor for the third shift will implement daily housekeeping practices to ensure that all areas of the Lee County Detention Center is kept clean, sanitary, and healthy.

4.   Inmates will be held responsible by all members of the Detention Center staff for maintaining their cells in a clean, sanitary and orderly manner.

5.   All Shift Supervisors will inspect the Detention Center during their shifts in order to ensure that cleaning operations have been carried out.

B.   *Inmate Housing Areas*

1.   Inmate housing areas will be cleaned by the inmates assigned to that cell at least two times daily.

2.   The first and second Shift Supervisors will ensure that appropriate cleaning, supplies, and equipment are issued to inmates and will ensure that inmates are properly instructed to clean their cells and common areas.

3. Each cleaning will consist of the following:

   a. Floors are to be swept and mopped.

   b. Toilets are to be scrubbed with toilet cleanser and disinfectant.

   c. Sinks and showers are to be scrubbed with scouring cleanser and disinfectant.

   d. Tables and benches are to be washed.

   e. Bunks and sleeping areas are to be made clean and orderly.

4. Trash receptacles are to be emptied and washed daily.

5. The Shift Supervisor on duty will require inmates to re-clean any areas which are not cleaned correctly the first time.

6. The Shift Supervisor on duty will implement disciplinary procedures against any inmate who repeatedly does not carry out housekeeping duties or share equally in keeping his or her cell and living area clean.

7. The Shift Supervisors, with the assistance of the Detention Center staff, will ensure that all cleaning supplies and equipment are returned to the supply room.

8. The Shift Supervisor will indicate in the Detention Center log when clean-up is completed.

C. *Housekeeping of Common Areas*

1. The first and second shift Detention Center Supervisors will ensure that the common areas of the Detention Center, including the inmate dayrooms, are kept clean and orderly by trusty inmates.

2. The trusties will be responsible for the following:

   a. Sweeping and mopping all hallways twice daily.

   b. Cleaning all heater vents and common areas and all window sills each day.

c.    Stripping and waxing floors within the Detention Center facility at the Chief Deputy Sheriff's direction.

d.    Sweeping and mopping hallways daily.

e.    Washing walls and windows once each week.

f.    Sweeping and mopping the multi-purpose area once each day.

g.    Removing the trash from the Detention Center once each day.

h.    Cleaning and sanitizing non-inmate restrooms and re-stocking supplies.

i.    Cleaning all air vents and screens at least once each week.

j.    Other tasks, including regular cleaning and maintenance of mattresses, as required by members of the Detention Center staff.

3.    The Shift Supervisor on each shift will inspect all areas of the Detention Center for which trusties are responsible in order to ensure that all cleaning duties are carried out properly.

4.    When the need arises, inmates in addition to regular Detention Center trusties may be selected by the Chief Deputy Sheriff or, at his direction, by the Shift Supervisor on duty for maintenance and ground details.

5.    All inmates, including trusties, working outside the secured area of the Detention Center will be strip-searched before re-entering the Detention Center.

By Order of:

Jay M. Jones, Sheriff
Effective Date: _____ 01-01-2000

| SANITATION AND CLOTHING | SECTION 13 |
|---|---|
| **Laundry Service** | **Title 13.04** |

## *Policy*

It is the policy of the Lee County Sheriff's Department to provide each person incarcerated in the Lee County Detention Center with a clean set of facility issued clothing, linens, bedding, and a towel upon admission to the Lee County Detention Center in order that sanitation and hygiene may be maintained. All facility issued clothing and linen will be laundered according to established schedules.

## *Procedure*

A.    *New Inmates*

1.    Immediately following admission to the Lee County Detention Center, each new inmate will be issued a Detention Center uniform.

2.    Inmates in the Lee County Detention Center will be allowed to possess three pairs of socks, three pairs of underwear, two t-shirts, one pair of gym shorts, and one pair of tennis shoes.

3.    The issuing officer will make sure that all clothing issued to an inmate is in good condition at the time it is distributed.

4.    At the time an inmate is assigned to his housing area, he will be issued one blanket, two sheets, and one towel.

5.    All clothing and linen issued will be noted on the Inmate Property Issue form by the issuing officer and the inmate will sign for the receipt of those items.

6.    Inmates are charged with the responsibility of caring for all clothing, linen, and bedding issued to them. The Lee County Sheriff's Department will exhaust all legal means to recover the value of items maliciously damaged by inmates.

B.    _Clothing Laundry_

1.    Laundry service will be provided by the Lee County Sheriff's Department at no expense to inmates.

2.    All trusties will have their clothing laundered on a daily basis due to the possibility that they may come in contact with food.

3.    Any inmate on work release will have their clothing laundered daily, if necessary.

4.    E and F wings of the Detention Center will change out clothing for laundry on Monday and Thursday of each week. The remaining areas of the Detention Center will change out clothing for laundry on Tuesday and Friday of each week. Clothing belonging to trusties will be laundered on Wednesdays and Saturdays.

5.    Any contaminated clothing will be washed separately from all other laundry.

C.    _Linen Laundry_

1.    Inmate linens will be collected at least once each week.

2.    Blankets shall be laundered at least once each month.

D.    _Laundry Supervision_

1.    Inmate clothing and linens, at designated laundry times, will be distributed and collected under the direct supervision of a member of the Detention Center staff.

2.    The laundry service area of the Detention Center will be supervised by the Shift Supervisor on duty on an irregular schedule each day.

3.    The laundry service area will be manned by a laundry trusty who will work under the direction of the Detention Center staff on duty.

4.    The laundry service area will be operated by the laundry trusty from 6:00 a.m. until all work is completed each day. The laundry trusty and any trusty assigned by the Detention Center staff to assist him will be the only inmates allowed in the laundry service area.

5.  The Shift Supervisor on duty will ensure that the laundry trusty understands the limitations and responsibilities or his or her duties.

6.  The Shift Supervisor on duty will ensure that the laundry trusty can operate laundry equipment and launder clothing properly and in an appropriate manner.

7.  The Shift Supervisor will ensure that the laundry trusty implements proper procedures in handling and washing contaminated laundry.

8.  The Shift Supervisor is charged with the responsibility of ensuring that laundry is done according to the designated schedule.

9.  The laundry trusty will assist members of the Detention Center staff with collecting laundry from each cell and delivering clean laundry to each cell.

10. The laundry trusty will wash, dry, fold, and store all laundry in its appropriate place according to the laundry schedule.

11. The laundry trusty will perform all housekeeping duties which are necessary to keep the laundry area clean and orderly.

12. The laundry trusty will be appointed by the Chief Deputy Sheriff.

13. Should it become necessary, the Chief Deputy Sheriff may, at his discretion, appoint more than one person to the position of laundry trusty.


By Order of:


Jay M. Jones, Sheriff
Effective Date: _____ 01-01-2000 _____

Reference Form:    4    Inmate Detention Center Property Issue and Receipt Form

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **SANITATION AND CLOTHING** | **SECTION 13** |
| <u>Inmate Personal Property</u> | **Title 13.05** |

*Policy*

It is the policy of the Lee County Sheriff's Department to allow inmates to keep a limited amount of personal property in their possession while incarcerated at the Lee County Detention Center.

*Procedure*

1.  Inmates at the time they are admitted to the Lee County Detention Center will be issued a property storage container. This container will be numbered and the number of the container issued to the inmate will be recorded by the issuing officer. The inmate shall sign a form acknowledging receipt of the container.

2.  All personal property belonging to inmates, with the exception of wet towels, will be stored in the inmate's property container at all times when not in use.

3.  Towels shall be placed on drying racks provided until dry, then removed by the inmate and stored in his property container.

4.  The property containers shall be stored on the floor underneath the inmate's bunk.

5.  It is the responsibility of the Shift Supervisor to bring disciplinary and criminal charges against any inmate who fails to properly utilize his storage container or who destroys his storage container.

6.  Inmates, at the time they are released from the Detention Center, must account for the property container which was issued to them. Should an inmate destroy his property container or fail to account for it at the proper time, the Lee County Sheriff's Department will exhaust all legal means to recover the value of the container.

By Order of:

Jay M. Jones, Sheriff

Effective Date: _____ 01-01-2000 _____

Reference Forms:     1     Alabama Uniform Arrest Report

                     4     Inmate Detention Center Property Issue and

Receipt Form
10    Incident Report
28    Disciplinary Report
29    Notification of Charges

# SHERIFF'S DEPARTMENT

| | |
|---|---|
| SANITATION AND CLOTHING | SECTION 13 |
| Tobacco Products Prohibited | Title 13.07 |

## *Policy*

It is the policy of the Lee County Sheriff's Department that the use of any tobacco product by inmates, staff, or visitors be prohibited within the confines of the Lee County Detention Center, its building, and the grounds within the fences surrounding the building.

## *Procedure*

1. Inmates are not permitted to use any form of tobacco products in the Lee County Detention Center.

2. Employees are not permitted to use any form of tobacco products in the lee County Detention Center.

3. Visitors, including law enforcement officers, are not permitted to use any form of tobacco products in the Lee County Detention Center.

4. Possession or use of tobacco products in the detention area will be a violation of inmate rules and departmental policy.

## *Discussion*

There are several factors involved in the decision to create a tobacco-free Detention Center. Some of these are:

1. Published reports by the Surgeon General and other agencies since the mid-1960s have indicated that cigarette smoking is a hazard to personal health. Subsequent studies have indicated danger also exists from the use of other tobacco products such as chewing tobacco and snuff.

2. The absence of tobacco smoke would aid in the maintenance of the Lee County Detention Center. Tar residue from tobacco smoke stains walls, ceilings, furniture, office equipment, windows, and other furnishings and embellishments.

3.    The Lee County Detention Center contains a significant amount of expensive and sensitive electronic controls and equipment.  Tar from tobacco smoke eventually will have a negative effect on electronic sensors and controls, creating maintenance problems which could be avoided through a tobacco-free jail environment.

4.    Inevitably, some smokers will extinguish tobacco products by placing them on the floor and grinding them underfoot.  This creates unsightly floor stains and unnecessary maintenance problems.  The same is true with lighted tobacco products which are left to burn on windowsills, table edges, lavatories, etc.

5.    There always is an unnecessary fire hazard present when smoking is allowed.  The heat and flame generated by lighted tobacco products is sufficient to ignite sheets, clothing, etc.

6.    The lighted end of a tobacco product can be effectively utilized to deface windows (or other surfaces) in the Detention Center creating additional unnecessary maintenance problems.

7.    Tobacco juice produced through the process of chewing or dipping generates unsightly stains when spilled or spit upon the floor, furniture, or equipment.  Additionally, tobacco juice spilled on or into electronic equipment or sensors can wreak havoc on that equipment, causing either maintenance problems or malfunction of the equipment.

**By Order of:**

Jay M. Jones, Sheriff
Effective Date:    01-01-2000

Reference Forms:    28    Disciplinary Report
                    29    Notification of Charges

# EXHIBIT 8

Lee County Detention Center
Policy & Procedure Manual,
Section 14, "Inmate Rights"

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **INMATE RIGHTS** | **SECTION 14** |
| **Inmate Rights** | **Title 14.01** |

### Policy

It is the policy of the Lee County Sheriff's Department that Sheriff's Department personnel employed at the Lee County Detention Center be aware of and protect inmate rights, both civil and legal. These rights include:

a. Freedom from discrimination based on race, religion, national origin, sex, handicap or political beliefs;

b. Equal access to programs and work assignments;

c. Protection from personal abuse, corporal punishment, personal injury, disease, property damage, and harassment; and

d. Freedom from reprisals or penalties as a result of seeking administrative or judicial redress.

### Procedure

1. All employees having direct contact with inmates must treat them respectfully and courteously.

2. All inmates shall have equal access to programs, services, activities, and work assignments. Assess will be denied only to maintain security, order, or for other legitimate penalogical reasons such as a loss of privileges as a result of disciplinary action.

3. Detention Center staff may use only the minimum physical force necessary to control combative or uncooperative inmates. Physical abuse may not be used to punish an inmate for a rule violation.

4. Discipline will be fairly and equally administered.

5. The Sheriff and Chief Deputy Sheriff will review policies and procedures annually to be

sure that all rights to which the inmates are entitled are being upheld.

6.    The Chief Deputy Sheriff will ensure that all Detention Center personnel receive training in inmate rights.  This training will include, but not be limited to:

    a.    The proper execution of policies and procedures necessary to ensure the rights of inmates; and

    b.    Report writing and documentation of procedures implemented to ensure the rights of inmates.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:**    01-01-2000

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **INMATE RIGHTS** | **SECTION 14** |
| <u>Access to Courts</u> | **Title 14.02** |

*Policy*

It is the policy of the Lee County Sheriff's Department that persons incarcerated in the Lee County Detention Center have access to the courts, attorneys, and their authorized representatives.

*Procedure*

A.    *Staff Regulations*

1.    All members of the Detention Center staff shall make every effort to facilitate private, uncensored communications between inmates and their attorneys.

2.    Members of the Detention Center staff shall commit no act which will deny or hinder in any way the right of an inmate to have access to the courts.

B.    *Inmates' Written Communications*

1.    Written legal materials from inmates which they intend to be carried by the United States mail will be mailed immediately without being opened or read.

2.    In cases where an inmate is indigent and does not have funds for postage, the Lee County Sheriff's Department will provide postage for an inmate upon receiving a written request from that inmate.

3.    In the event that an inmate is determined to be no longer indigent, all costs of postage advanced may be removed from the inmate's funds.

C.    *Inmates' Verbal Communications*

1.    Inmates are to be given access to the telephones in the dayroom each day from 7:00 a.m. until 9:00 p.m.

2.    Telephone privileges will also be extended to persons not incarcerated in the dayroom area of the Detention Center on a regular basis, at least four hours per day between 7:00

a.m. and 9:00 p.m.

3.    Inmates shall be entitled to privileged visits at any reasonable time as determined by the Chief Deputy Sheriff.  Privileged visits include those with:

    a.    Court judges and court officials;
    b.    Grand jury members;
    c.    The District Attorney and his staff;
    d.    Attorneys;
    e.    Peace officers;
    f.    Members of the Alabama Parole Board and its representatives;
    g.    Probation officers;
    h.    Other officials of the criminal justice system.

4.    A member of the Detention Center staff on duty will record in the visitor's log the name of the visitor, the intent of the visit, and the name of the inmate to be seen after the visitor has presented proper identification.

5.    Every effort will be made to permit the visitor and the inmate to speak privately and the length of the visit will be limited only if it is necessary to give equal time to other inmates.

6.    Should a privileged visitor ask for confidentiality during the visit, the Shift Supervisor shall make all reasonable efforts to comply with this request.

D.    *Access to Legal Materials*

1.    Persons incarcerated in the Lee County Detention Center may have access to the Lee County Detention Center Law Library after submitting a written request to the Chief Deputy Sheriff, Captain, Lieutenant, or Shift Supervisor.

2.    If possible, the inmate requesting access to the library should make a specific request for materials needed.  If this is possible, a member of the Detention Center staff will obtain copies of those materials and return them to the inmate.  If not, the inmate will be taken to the library at the next available time.

3.　　Inmates in administrative segregation who may not visit the library may make requests for specific documents.


**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** _____ 01-01-2000

**Reference Form:** 　　8　　**Inmate Request Form**

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **INMATE RIGHTS** | **SECTION 14** |
| **Inmate Mail** | **Title 14.03** |

*Policy*

It is the policy of the Lee County Sheriff's Department to encourage correspondence between inmates housed in the Lee County Detention Center and those persons in the community who may be of service to them in solving the problems they encounter as a result of their incarceration. The Sheriff's Department staff recognizes that it is important for inmates to maintain ties with family and friends and to exercise their right to free access to courts, government, and the press.

*Procedure*

A.    *Postage and Writing Materials*

1.    Inmates may write an unlimited amount of letters if they can pay for postage. Postage stamps will be sold through the commissary to inmates at cost.

2.    Inmates who are deemed by the Chief Deputy Sheriff to be indigent may mail up to three personal letters each week with postage supplied by the Lee County Sheriff's Department. Unlimited postage will be given to indigent inmates for privileged mail.

3.    At any time postage is distributed to an indigent inmate, a record will be made of the amount distributed on an Incident Report and placed in the inmate's Detention Center file.

4.    Writing paper, envelopes, and pencils will be made available to the inmates through the commissary. Indigent inmates may obtain these items on the same basis as postage stamps.

B.    *Incoming Mail*

1.    A member of the Detention Center staff will receive incoming mail addressed to inmates at the Lee County Detention Center and, except where circumstances prevent, deliver the correspondence to the inmate to whom it is addressed within 24 hours. Mail may be delivered to inmates only by a staff member and only directly to the addressee. All

correspondence addressed to a inmate which is received from an attorney, judge, court, or other public official acting in an official capacity will be opened only in the inmate's presence. This mail will be examined only to determine that the shipping package does not contain contraband.

2.  Non-privileged mail will be opened and examined by a member of the Detention Center staff before delivery to the inmate to whom it is addressed. The member of the Detention Center staff will not read the mail unless he has reason to believe it contains evidence of a threat to public safety for the order and security of the Detention Center facility.

3.  Any material received in the mail which advocates violence or disruption of the facility security, which encourages criminal sexual behavior, or which advocates racial, religious, or national hatred that could cause danger of violence in the facility will be confiscated. If there is any question regarding the acceptability of materials, the Chief Deputy Sheriff will make the final decision.

4.  The Detention Center officer confiscating contraband found in the mail must turn it over to the proper law enforcement authorities for the filing of charges. If the item is determined to be not illegal, the property is to be stored until the inmate is released.

5.  At any time any item is confiscated from inmate mail or the mail is withheld or rejected a written report shall be filed regarding the reasons for the action, placed in the inmate's Detention Center file and a copy of the report shall be forwarded to the inmate.

6.  Books will be accepted by the Sheriff's Department at the Detention Center only if they are sent directly from the publisher.

7.  Inmates may not receive newspapers or magazines at the Lee County Detention Center.

8.  Mail received for persons no longer in custody may be forwarded to them if their current address is known. If the address is unknown, the mail should be returned to the sender.

C.  *Outgoing Mail*

1.  Outgoing mail to attorneys, courts, or governmental agencies and media representatives may not be opened or inspected by members of the Detention Center staff.

2.  All other mail should be delivered to members of the Detention Center staff by the inmate in an unsealed condition in order that it may be inspected for contraband or other illegal

contents.

3.   Any outgoing mail that is rejected is placed in the inmate's property and returned to him
     at the time he is released.

4.   With regard to illegal material or the confiscation of outgoing mail, the same procedure
     should be followed as with incoming mail as listed above.

5.   No correspondence from an inmate incarcerated in the Lee County Detention Center will
     be placed in the United States Mail unless the inmate's name and return address are on the
     outside of the envelope as follows:

                         Name of Inmate
                         Lee County Detention Center
                         Post Office Box 2407
                         Opelika, AL  36801

6.   Inmates may not correspond with any person confined in any other law enforcement
     facility or institution.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** _01 - 01 - 2000_

**Reference Forms:**     8     **Inmate Request Form**
                        10     **Incident Report**

# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **INMATE RIGHTS** | **SECTION 14** |
| **Inmate Requests and Grievances** | **Title 14.04** |

### _Policy_

It is the policy of the Lee County Sheriff's Department that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the Sheriff, Chief Deputy Sheriff, or Detention Center personnel.

### _Procedure_

A.  _Requests_

1.  Requests for medical attention, telephone calls, or other matters must be made in writing on an Inmate Request Form.

2.  An exception exists for requests of an emergency nature which will be handled immediately without a written request.

3.  All requests will be routed to the Chief Deputy Sheriff and, if necessary, forwarded by him to the proper authority.

4.  Inmates housed in the Lee County Detention Center will be furnished with Inmate Request Forms for the purpose of stating their requests or grievances in writing.

5.  Detention Center personnel are charged with the responsibility of receiving and forwarding these forms to the proper authority at any time they are offered a completed form by an inmate.

B.  _Grievances_

1.  Inmates are encouraged to informally resolve grievances between themselves and members of the staff when possible. If this is not possible, the inmate may complete a request form stating his grievance.

2.  The staff member receiving the Inmate Request Form must sign it, date it, and note the

time of day it is received.

3.    If possible, the member of the Detention Center staff receiving a grievance should answer it but, if he cannot do so, it should be forwarded to the Chief Deputy Sheriff for further action.

4.    The staff member answering the grievance must decide if a staff member or inmate has acted improperly, if an inmate's rights were violated, if privileges were unjustly denied, of if a crime was committed.  After reviewing the grievance, he must write his response on the Inmate Request Form, giving findings which substantiate or disprove the complaint and, if applicable, a remedy.  This person must also sign, date, and note the time of his response on the request form.

5.    After the above process is completed, a copy of the request form containing the response is made and delivered to the inmate.  This should be done within 72 hours of the time the grievance is received, excluding weekends and holidays.

6.    Grievances should be first answered by the appropriate staff member at the lowest level in the chain of command.

7.    If an inmate is dissatisfied with the response he receives, he may appeal, in writing, to the next higher level in the chain of command of the Sheriff's Department.

8.    The original copy of the inmate's grievance, containing the response by Detention Center officials, shall be placed in the inmate's Detention Center file.

9.    No negative sanction may be taken against any inmate for filing a grievance.

By Order of:

Jay M. Jones, Sheriff
Effective Date:    01- 01- 2000

Reference Forms:    8    Inmate Request Form

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **INMATE RIGHTS** | **SECTION 14** |
| Inmate Telephone Calls | **Title 14.05** |

*Policy*

It is the policy of the Lee County Sheriff's Department to provide telephone communications between persons incarcerated in the Lee County Detention Center and their families, friends, and attorneys.

*Procedure*

1. All inmates will be allowed to complete a reasonable number of collect telephone calls at the time of admission to the Lee County Detention Center as provided by Sheriff's Department policy.

2. Inmates in the general population areas of the Detention Center may use the telephones to make collect calls during the hours of 7:00 a.m. until 9:00 p.m.

3. Inmates placed in administrative segregation will be allowed access to a telephone only to contact their attorneys, courts, or legal representatives. They may make no personal telephone calls during the time they spend in administrative segregation.

4. The use of the telephone is an inmate's privilege and not a right. Inmate calls must be limited to ten minutes in order that others may use the telephone.

5. A member of the Detention Center staff may limit access to the telephone or interrupt a telephone call if he or she deems it necessary to maintain security.

6. Special telephone calls may be approved by the Detention Center supervisor on an individual basis when an inmate makes a request for such a call and can demonstrate a special need. An Incident Report should be prepared reflecting such action if an Inmate Request form was not submitted and completed.

7.    No collect calls will be accepted at the Lee County Detention Center.

**By Order of:**

Jay M. Jones, Sheriff

**Effective Date:**    07-01-2006

**Reference Forms:**    5    Booking Telephone Log
                        8    Inmate Request Form
                        10   Incident Report
                        28   Disciplinary Report
                        29   Notification of Charges

# SHERIFF'S DEPARTMENT

| INMATE RIGHTS | SECTION 14 |
|---|---|
| Religion | Title 14.06 |

## Policy

It is the policy of the Lee County Sheriff's Department to allow persons incarcerated in the Lee County Detention Center the opportunity to worship in the recognized religion of their choice, receive religious counseling, and attend in-house religious programs.

## Procedure

1. Religious professionals and religious volunteers who wish to provide scheduled religious programs must be cleared by the Chief Deputy Sheriff before being admitted to the Detention Center.

2. All religious visitors are subject to search and must comply with all visitor regulations.

3. Religious volunteers who are approved may go into the dayroom and provide ministry in general population areas to those inmates who wish to participate.

4. Religious volunteers may also make use of the multi-purpose area in order to hold religious services.

5. Inmates in administrative segregation may receive ministry individually only.

6. Detention Center officials may end or limit a ministry session or limit the number of religious volunteers if necessary.

7. Religious services may be scheduled for a set time each week. Other services may be scheduled for other times with the Chief Deputy Sheriff's approval.

8. No inmate who, in the opinion of the Sheriff, Chief Deputy Sheriff, or Shift Supervisor, presents a security risk may attend religious services. Such inmates will be allowed free access to religious counseling or conferences on an individual basis.

9. No member of the Detention Center staff may discriminate against any inmate on the basis on that inmate's choice of religion.

10.    The Lee County Sheriff's Department will not provide any religious materials of any nature to inmates at Sheriff's Department's expense.

11.    Inmates requesting marriage, baptism services, or to attend funeral services shall be instructed to contact an attorney in order to request a court order.

**By Order of:**

Jay M. Jones, Sheriff
**Effective Date:** _____ 01-01-2000 _____

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| INMATE RIGHTS | SECTION 14 |
|---|---|
| Exercise | Title 14.07 |

## Policy

It is the policy of the Lee County Sheriff's Department to provide persons incarcerated in the Lee County Detention Center with a variety of leisure activities for the purpose of therapy, education, and recreation participation.

## Procedure

1. All inmates may participate in programs and activities unless security and safety concerns dictate otherwise.

2. Inmates serving time in administrative segregation for disciplinary reasons are not permitted to attend programs outside their housing area but are permitted one hour of recreation per day outside their housing area.

3. General population inmates will be allowed to participate in organized recreation programs, have access to available board games and playing cards, and have access to televisions and radios during reasonable hours.

4. Security and weather conditions permitting, inmates will be allowed one hour of outside exercise at least five days each week.

5. Use of outdoor recreation is at the Shift Supervisor's discretion.

6. Members of the Detention Center staff may limit the number of people using the outdoor recreation area at any one time.

7. All special activities including games, holiday related programs, or other events scheduled in addition to daily activities may be participated in by all general population inmates. No such event will occur unless adequate supervision by members of the Detention Center staff is available.

By Order of:

Jay M. Jones, Sheriff
Effective Date: 01-01-2000

# EXHIBIT 9

Lee County Detention Center
Policy & Procedure Manual,
Sections 7, "Security,"
Title 7.05, "Searches," and
Title 7.06, "Contraband."

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **SECURITY** | **SECTION 7** |
| **Searches** | **Title 7.05** |

### *Policy*

It is the policy of the Lee County Sheriff's Department that frequent unannounced searches of inmates, their cells, and all other areas of the Lee County Detention Center shall be conducted by the staff of the Lee County Detention Center in order to secure facility safety and security. All searches shall be done in a manner which avoids unnecessary force, embarrassment, or indignity to the inmate.

### *Definitions*

1.  *Strip Search:* A search during which an inmate is required to remove his clothing.

2.  *Pat Search:* A search during which an inmate is not required to remove his clothing.

3.  *Body Cavity Search:* A visual, manual, or instrument inspection of an inmate's anal or vaginal cavity.

### *Procedure*

A.  *Inmate Search*

1.  All inmate searches shall be done by an officer of the same sex as the inmate. The only exception to this rule will be when there is a definite threat to the life of an inmate, officer, or visitor, or if valuable evidence will be lost if there is not an immediate search. In such cases, an officer of the opposite sex may do a pat search only if no officer of the same sex is available.

2.  Inmates will not be touched any more than necessary to thoroughly search their persons and officers may not embarrass or cause indignity to inmates by remarks or actions.

3.  Strip searches shall be done at the following times:

    a.  After an inmate who is housed in the facility is booked, unless prohibited by law.

    b.  After an inmate has had any type of contact visit.

    c.  When an inmate enters or exits administrative or disciplinary segregation, if

deemed necessary based on the circumstances.

d.    When an inmate is suspected of having contraband.

e.    When an inmate is apprehended after an escape attempt.

f.    After an inmate has participated in a disturbance.

g.    During area searches, when approved by the Chief Deputy Sheriff, the Sheriff, Captain, Lieutenant, or a Shift Supervisor. Such approval must be based on a reasonable suspicion which should be documented in an Incident Report.

h.    On trusties working outside the security perimeter before they return to the housing area.

4.    Pat searches are done at the following times:

a.    Before allowing an inmate into the booking area.

b.    Before putting restraints on an inmate who is to be transported.

c.    When there is reasonable suspicion that an inmate has contraband on his person.

d.    Before allowing trusties back into their cells after they have been working.

e.    During area searches.

f.    Before allowing arrestees into the secure area of the facility.

5.    Body cavity searches shall be done only by medical personnel and upon the order of the Chief Deputy Sheriff or his designee.

B.    _Facility Searches_

1.    For cell searches, if the cell is unoccupied, the Detention Center officer shall search it before he assigns an inmate to it. If the cell is occupied, the inmate is taken from it and searched before the room is searched. Searches will be done frequently and irregularly.

2.    To do an effective room search, a Detention Center officer must:

a.    Probe holes and cracks in the walls, floors, and ceiling.

b.    Check for tampering with light fixtures or coverings.

c.    Inspect the washbowl, plumbing housing, and toilet and also determine if such plumbing has been moved from where it was attached to the wall.

d.    Examine all bedding by shaking out and feeling of the seams of blankets, sheets, and pillowcases. The officer should run his hands over the mattress with enough pressure to feel anything hidden there. He should roll the mattress and squeeze the corners, check for any tears or openings that have been re-sewn and pay special attention to seams.

e.    Leaf through books, magazines, and newspapers, checking the bindings and covers on hardback books.

f.    Check for false bottoms on boxes, cups, and tobacco packages and for cigarettes that have been repacked.

g.    Examine windows, window frames, and vents.

h.    Check doors and grooves in door frames and on sliding doors.

i.    Check all locks.

j.    Examine all clothing, with special attention to any area where material is double layered. He should insert his hand into the full length of shoes, check for slits in the soles and heels, and bend shoes to make sure nothing is hidden in them which makes them inflexible.

k.    Examine rolls of toilet paper by squeezing and checking the hollow centers.

l.    Examine all sides of furniture, being careful to look for hidden sharp instruments before touching.

3.    During cell searches, certain articles should be removed from the cells for fire and safety purposes. All old newspapers and/or periodicals should be thrown away. All articles hanging on the walls should be taken down, leaving personal pictures and/or drawings in

the cell and discarding magazine pictures or other non-personal items. All lines or wires across or around cells should be removed. Remove all drinking cups from cells so that they may be washed, sterilized, and placed back in inventory.

4.  Corrections Officers should do general area searches frequently and irregularly, checking the corridors, multi-purpose area, closets, kitchen, laundry area, and all other areas of the Detention Center.

5.  Corrections Officers should do perimeter searches of the facility frequently and irregularly, paying special attention to areas which are accessible to both the public and to maintenance trusties. These areas should include the public lobby, attorney visitation rooms, restrooms, outdoor recreation area, and others as needed.

6.  Corrections Officers should search supplies delivered to the facility before giving an inmate access to them.

C.  *Searches for Evidence of a Crime*

Searches for criminal evidence should be conducted when authorized by the Chief Deputy Sheriff or his designee only. If a crime has been committed, a member of the Detention Center staff will initially enter the area only to secure the crime scene. At the discretion of the Chief Deputy Sheriff, a search of the crime scene may be conducted by a Sheriff's Department investigator who will determine the correct search and seizure procedures to follow in order to ensure legal protection of the inmate.

By Order of:

Jay M. Jones, Sheriff
Effective Date: ___01 - 01 - 2000___

Reference Forms:      10    Incident Report
                      28    Disciplinary Report
                      29    Notification of Charges

# LEE COUNTY
# SHERIFF'S DEPARTMENT

| | |
|---|---|
| **SECURITY** | **SECTION 7** |
| <u>Contraband</u> | **Title 7.06** |

## *Policy*

It is the policy of the Lee County Sheriff's Department that, when a member of the Lee County Detention Center staff discovers contraband inside the Lee County Detention Center, he keep it in his control and custody until it is properly stored or disposed of in order to maintain a proper chain of evidence or record of storage or disposal.

## *Definition*

<u>*Contraband*</u>: Any property or object which has not been provided or approved by the Lee County Sheriff's Department, or any approved item which has been altered, changed, or misused.

## *Procedure*

At any time a member of the Detention Center staff discovers contraband, he will take it from the inmate or the area in which it was found and keep it in his possession. He should then contact the Shift Supervisor who will decide whether the existence of the contraband indicates whether a crime has been committed. If so, the staff member discovering the contraband will complete evidence procedures. If not, he will follow either disposal or disciplinary procedures, as applicable.

A.    *Evidence Procedures*

1.    The staff member who discovers contraband will put the evidence in an evidence bag or tag the property according to Sheriff's Department policy.

2.    He will store the evidence in a secure area designated for such purposes.

3.    He will file an Incident Report and follow procedures in order to have criminal charges filed according to Sheriff's Department policies and procedures.

4.    The Shift Supervisor will be responsible for notifying the investigation division of the Sheriff's Department in order that they may coordinate efforts with the Detention Center staff.

B.  *Disposal Procedures*

1.  If no charges are to be filed after the discovery of contraband, or if there is no suspect to charge, but the contraband is dangerous or illegal, the staff member who found the contraband will place the contraband in an evidence bag and tag it before disposal.

2.  If the contraband is not dangerous or illegal, and no inmate will be charged with a rule violation, the staff member may dispose of the contraband according to the Chief Deputy Sheriff's directions.

3.  No contraband should be disposed of in an area that is accessible to inmates.

4.  Under no circumstances will a member of the Detention Center staff be permitted to keep contraband for personal use.

C.  *Disciplinary Procedures*

1.  If the contraband will be used as evidence in a disciplinary hearing, the staff member who found it will seal it in a plastic bag and attach it to the original copy of the Incident Report regarding the disciplinary charge and forward these documents to his Shift Supervisor.

2.  If the contraband is of such size or shape that it cannot be attached to the Incident Report form, the staff member will ask the Shift Supervisor for directions regarding its safe and secure storage.

By Order of:

Jay M. Jones, Sheriff
Effective Date:    07-01-2000

Reference Forms:    1    Alabama Uniform Arrest Report
                   10    Incident Report
                   28    Disciplinary Report
                   29    Notification of Charges

# EXHIBIT 10

Lee County Sheriff's Office
Medical Screening Form

/2006    04:18:15    LEE COUNTY SHERIFF'S OFFICE
MEDICAL SCREENING FORM                          PAGE 1
=================================================================

Booking No: 060003002  Date: 06/18/2006  Time: 04:10  Type: NORMAL
Agency to Bill: LEE COUNTY              Facility: COUNTY JAIL

Inmate Name: DAVIS ROBERT LOUIS
     DOB: 02/07/1964 Age:  42  SSN: 418 84 0398  Height: 6'02"  Weight: 170
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

*No*    1.  Is inmate unconscious?

*No*    2.  Does inmate have any visible signs of trauma, illness, obvious pain
            and bleeding, requiring immediate emergency or doctor's care?

*No*    3.  Is there obvious fever, swollen lymph nodes, jaundice or other
            evidence of infection that might spread through the facility?

*No*    4.  Any signs of poor skin condition, vermin, rashes or needle marks?

*No*    5.  Does inmate appear to be under the influence of drugs or alcohol?

*No*    6.  Any visible signs of alcohol or drug withdrawal?

*No*    7.  Does inmate's behavior suggest the risk of suicide or assault?

*No*    8.  Is inmate carrying any medication?

*No*    9.  Does the inmate have any physical deformities?

*No*   10.  Does inmate appear to have psychiatric problems?

       11.  Do you have or have you ever had or has anyone in your family
            ever had any of the following?

*No* a. Allergies      *No* f. Fainting Spells     *No* k. Seizures

*Yes* b. Arthritis     *Yes* g. Hearing Condition  *No* l. Tuberculosis

*Yes* c. Asthma        *No* h. Hepatitis           *No* m. Ulcers

*Yes* d. Diabetes      *Yes* i. High Blood Pressure *No* n. Venereal Disease

*No* e. Epilepsy       *No* j. Psychiatric Disorder ____ o. Other (Specify)

Other: _Pielump in Nose_ _____

       _____

       _____


12.  For females only:

       ____ a. Are you pregnant?

       ____ b. Do you take birth control pills?

       ____ c. Have you recently delivered?

LEE COUNTY SHERIFF'S OFFICE
/2006      04:18:15      MEDICAL SCREENING FORM                    PAGE 2
========================================================================

)king No: 060003002  Date: 06/18/2006  Time: 04:10   Type: NORMAL
.gency to Bill: LEE COUNTY                  Facility: COUNTY JAIL

Inmate Name: DAVIS ROBERT LOUIS              Race: B       Sex: M
      DOB: 02/07/1964 Age:  42  SSN: 418 84 0398  Height: 6'02"  Weight: 170
------------------------------------------------------------------------

_Yes_  13.  Have you recently been hospitalized or treated by a doctor?

_Yes_  14.  Do you currently take any non-prescription medication or medication
            prescribed by a doctor?

_No_   15.  Are you allergic to any medication?

_No_   16.  Do you have any handicaps or conditions that limit activity?

_No_   17.  Have you ever attempted suicide or are you thinking about it now?

_No_   18.  Do you regularly use alcohol or street drugs?

_No_   19.  Do you have any problems when you stop drinking or using drugs?

_No_   20.  Do you have a special diet prescribed by a physician?

_No_   21.  Do you have any problems or pain with your teeth?

_No_   22.  Do you have any other medical problems we should know about?

Got Shot in Leg ———→ 6 months
Blood Pressure Pills - Sinus Problem

I HAVE READ THE ABOVE ACCOUNTING OF MY MEDICAL ASSESSMENT AND I FIND IT TO BE
TRUE AND ACCURATE.

INMATE: _Robert Davis_          DATE: _6/18/06_     TIME: _4:45A_

BOOK OFFICER: _Jacks_           DATE: _6/18_        TIME: _____

# EXHIBIT 11

Doctor/Nurse's notes for Robert Davis
dated January 9, 2008

## NOTES

NAME: _Davis, Robert_    SS# _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_

DOB: _2/7/64_    AGE: _43_    SEX: _M_    RACE: _B_

DRUG ALLERGIES: _____    TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _Hx of HTN no Meds_

_____

_____

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

### HEALTH CARE DOCUMENTATION

SUBJECTIVE:

OBJECTIVE:    BP _140/80_    P _67_    R _____    T _____    O2 _96%_

**01-09-08    Lee County Detention Center Robert Davis  (418840398)**

**SUBJECTIVE:** A 43-year-old black male who takes a blood pressure pill that he doesn't know the name of, prescribed by Dr. Klinner for two or three years.  He says he also takes a "sinus tablet."

**OBJECTIVE:** HEART and LUNGS: are clear.  Blood pressure is 140/80.  He is not distressed.  He walks in with a normal comfortable gait.  No pedal edema.

**IMPRESSION:**   History of hypertension and nonspecific "sinus".

**PLAN:**  We will get Dr. Klinner's records to see what he is on.  We will check his blood pressure each week in case it takes a while for his records to come.

**ADDENDUM:** He stopped smoking a month ago.

JM/ld

------------------------------------------------------------

PLAN:

_medical records,_

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _John H McFarland MD_    TITLE _MD_    DATE _1-9-08_    TIME _0905_
AM8104894
AL 11404

# EXHIBIT 12

Lee County Detention Center
Fax Cover Sheet and Release

# Lee County Detention Center

## Fax Cover Sheet

Date: 1/9/08

Time: 14 3o

Attention: Michael Lewds

RE: _____

Number of Pages: 2

From: Medical Department
     Nursing Staff
Phone: (334) 737-3590 or 3591
Fax: (334) 737-3522

745-6048

I hereby authorize the Lee County Sheriff's Office to use, disclose and/or obtain my health information as follows (check all that apply):

| ( ) use the following health information maintained by Lee County Sheriff's Office. | ( ) disclose the following health information to: LEE COUNTY DETENTION CENTER P.O. BOX 2407 OPELIKA, AL 36803 | ( ) obtain the following health information from: _Dr. Kimmer_ |

Specific description of the health information to be used/disclosed/obtained (include dates of service, type of service, etc.) : _Copy or all my 8 above HTN_

This health information is used/disclosed/obtained for the purpose (if Authorization requested by the patient put: "At the request of the individual"): _Same Tip — Dr. McFarly_ _Name of Med. or Dose_

I understand that this health information may include information regarding drugs and alcohol, human immunodeficiency virus test results, and psychotherapy notes.

If the disclosure is for marketing purposes, will the Lee County Sheriff's Office directly or indirectly receive remuneration for the disclosure of health information? Yes ____ No ____ N/A ____.

By providing this Authorization, I understand as follows:

I understand that this Authorization is voluntary. I may refuse to sign this Authorization and my treatment and/or payment obligations will not be affected.

1. I understand that this Authorization is voluntary. I may refuse to sign this Authorization and my treatment and/or payment obligations will not be affected.
2. I understand that the health information to be released may be subject to re-disclosure by the recipient of the health information and no longer protected by the Federal Privacy Rules.
3. I understand that I may revoke this Authorization at any time by notifying the Lee County Sheriff's Office in writing, but if I do, it will not have any effect on uses or disclosures prior to the receipt of the revocation.
4. I understand that I will receive a copy of this Authorization form after I sign it.
5. I understand that this Authorization will expire on _____/_____/_____ (MM/DD/YR) or upon the following event (if for research put "None" or "End of the research study"): _____ If an expiration date is not chosen, this authorization will cease to be valid 90 days from the date of signature.

_Robert Davis_                                   _1/9/08_
Signature of Patient or Patient Representative        Date

_Stewart Gn wmp_
Printed Name of Patient's Representative (if applicable)

_____
Representative's Relationship to Patient (if applicable)

LEE COUNTY DETENTION CENTER
NURSING
PO BOX 2407
OPELIKA, AL 36803-2407

LEE COUNTY SHERIFF'S OFFICE

PATIENT AUTHORIZATION FOR USE AND/OR DISCLOSURE OF PROTECTED HEALTH INFORMATION

PATIENT INFORMATION

PATIENT NAME: _Davis, Robert_

_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_

DATE OF BIRTH _02/07/64_

# EXHIBIT 13

Medical Records for Plaintiff from
Dr. K.V. Klinner, Jr. verifying medication

Name Davis, Robert L.                    Age 39        Phone No. 745-4700        Date 9/26/02

Address 249 _____ Ave. _____ SMW __ Occupation _____ Jail Ref. By _____

HISTORY: 176 Chula Circle                DOB 5/2/64        55

EXAMINATION: T= 100°

DIAGNOSIS:

✗ HIPAA

MEDICO STATIONERY SERVICE, NEW YORK, N.Y.        FORM 109

FOR DEPOSIT ONLY
FARMER'S NATIONAL
DR. K.V. KLINNER, JR.

| Date | SUBSEQUENT FINDINGS & TREATMENT | Total | Paid | Balance |
|---|---|---|---|---|
| JAN 07 2003 | WT 179  Temp 98.8  BP 140/82  P 94 | | | |
| JAN 15 2003 | BP 150/110 | | | |
| JAN 21 2003 | 140/100 | | | |
| FEB 05 2003 | 130/90  "Blood — about the same" | | | |
| WT 178 | 98.5 | | | |
| FEB 20 2003 | 132/88  F15 | | | |
| 98.3 | | | | |
| MAR 06 2003 | 140/90 | | | |

FOLLOW-UP RECORD

| Name Davis, Robert | Address | | | |
|---|---|---|---|---|
| Date | SUBSEQUENT FINDINGS & TREATMENT | Total | Paid | Balance |
| MAR 18 2003 | T- 98-3  B/P 130/80  _____ | | | |
| | Os. By — _____ | | | |
| 8-4-03 | Med. Rec. _____ to Soc. Sec. Ok. Ret. Ser. | | | |
| NOV 07 2003 | 130/90 → _____  BP-15 yrs.  Rx _____ - 25 yd. | | | |
| | _____ | | | |
| | _____ | | | |
| 11-26-03 | Med. Rec. faxed to Sheriff Jay Jones | | | |
| MAR 24 2004 | 134/90  _____ | | | |
| | T-97.9  " _____ | | | |
| | Rx _____ | | | |
| SEP 18 2007 | 101/104 — _____  Ot _____ 12 mg | | | |
| | _____ | | | |
| OCT 08 2007 | 154/105  Rx _____ 50 d  _____ | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

FOR DEPOSIT ONLY
FARMER'S NATIONAL
DR. K.V. KLINNER, JR.

# EXHIBIT 14

Doctor/Nurse's notes for Robert Davis
dated January 15, 2008

## NOTES

NAME _Davis Robert_   SS# _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_

DOB: _2/7/64_   AGE: _43_   SEX: _M_   RACE _B_

DRUG ALLERGIES: _Ø_ _____   TETNUS: _____

NATURE OF PROBLEM OR REQUEST: _Cb Blowing out Blood_
_Cold s/s Ø Better_

_____

I CONSENT TO BE TREATED BY HEALTH STAFF FOR THE CONDITION DESCRIBED.

_____
SIGNATURE

HEALTH CARE DOCUMENTATION

SUBJECTIVE:

**01-15-08    Lee County Detention Center        Robert Davis  (418840398)**

**SUBJECTIVE**: A 43-year-old black male who says he still has his cold. He has brought a cardboard box that he has flattened out and uses as a tray to bring up every Kleenex or toilet tissue that he has used to blow his nose for the last several days. He says he is blowing up blood and yellow cold. He is quite hostile on exam. He tells me it is 68 to 72 degrees in the back and he doesn't have any tee shirt or underwear. He got hostile and told me that I would go to a football game without any shirt on but that he gets cold.

**OBJECTIVE**: PHYSICAL EXAM: He is hostile. He is resistant to being examined. I tried to percuss his sinuses. He jumped and I thought he was going to hit me. Each time I tried to do it I explained the importance of it. His nose and throat show some congestion. Ear canals and tympanic membranes are clear. NECK: supple. No significant adenopathy. He said it hurt every time I touched him. HEART and LUNGS: are clear. No wheezes or rhonchi or rales. No respiratory distress.

**IMPRESSION**:  Upper respiratory infection with probable sinusitis.

**PLAN**: Duratuss b.i.d. for ten days. Septra DS b.i.d. for ten days. Recheck in ten days with weight and blood pressure. He got so hostile that I had to ask the guard to take him back to the cell.

JM/ld

Duratuss    Bid ⎤ 10 d ~ rec 2wk
Septra DS   Bid ⎦       E wt & BP

REFER TO: _____ PA/PHYSICIAN _____ MENTAL HEALTH _____ DENTAL _____

SIGNATURE _____    TITLE _M_   DATE _1-15-08_  TIME _1011_

JOHN H MCFARLAND MD
AM8104894
AL 11404

# EXHIBIT 15

Medication Sheet – Administration Record
for Robert Davis for January, 2008

# MEDICATION SHEET - ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

HCTZ 25mg ī PO ā day — 0800

1/11/08

Clemastine Fumarate ī tab BID x 7 days — 0800

1/11/08 — 2100

Duratuss ī BID x 10 days — 0800

1/15/08 — 2100

Septra DS ī BID x 10 dy — 0800

1/15/08 — 2100

Theradou Crm — 1/21/08

Tylenol 500mg / tab PRN ī po PRN

| | 1 | 1 | 2 | 2 | 3 | 3 | 4 | 4 | 5 | 5 | 6 | 6 | 7 | 7 | 8 | 8 | 9 | 9 | 10 | 10 | 11 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |

| | 12 | 12 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 21 | 22 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |

| | 23 | 23 | 24 | 24 | 25 | 25 | 26 | 26 | 27 | 27 | 28 | 28 | 29 | 29 | 30 | 30 | 31 | 31 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | | | | | | | | | | | | | |
| PM | | | | | | | | | | | | | | | | | | | | | | |

CHARTING FOR ___ THROUGH ___

Physician ___
Att. Physician ___
Allergies ___

Telephone No. ___
Alt. Telephone ___
Rehabilitative Potential ___
Medical Record No. ___

Diagnosis ___
Medicaid Number ___    Medicare Number ___

Approved By Doctor: S. Fears    Title: LPN    Date: 1/11/08
By: ___
D.O.S ___    Sex ___    Room 64A    Patient Code ___ 7.4

RESIDENT   Davis, Robert

# EXHIBIT 16

Medication – Administration Record Sheet
for Robert Davis for February, 2008

# MEDICATION SHEET - ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| HYDROCHLOROTHIAZIDE.R.:01 MCFARLAND, JOHN TAKE 1 TABLET BY MOUTH ONCE DAILY | 0800 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Tylenol 500 mg / Motrin ĪĪ PO PRN | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Clonidine 0.1 mg BP 2/26/08 | 0800 2100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Lotrim | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Hydroc Cream | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

|  | 1 | 1 | 2 | 2 | 3 | 3 | 4 | 4 | 5 | 5 | 6 | 6 | 7 | 7 | 8 | 8 | 9 | 9 | 10 | 10 | 11 | 11 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | | | | | | | | mc | | mc | | | | JS | | | | | mc | | |
| PM | | | | | | | | | | | | | | | | | | | | | | | |

|  | 12 | 12 | 13 | 13 | 14 | 14 | 15 | 15 | 16 | 16 | 17 | 17 | 18 | 18 | 19 | 19 | 20 | 20 | 21 | 21 | 22 | 22 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | | | mc | | | | JS | | JS | | | LL | | | | mc | | | | JS | | SD |
| PM | | | | | | | | | | | | | | | | | | | | | | |

|  | 23 | 23 | 24 | 24 | 25 | 25 | 26 | 26 | 27 | 27 | 28 | 28 | 29 | 29 | 30 | 30 | 31 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AM | mc | | mc | | LL | | JS | | | | SD | | JS | | | | | |
| PM | | | | | | | AB | | | | mc | | | | | | | |

CHARTING FOR 02/01/08 THROUGH 02/29/08    PAGE 1 OF 1

| Physician | MCFARLAND, JOHN | Telephone No. | 334-705-1154 | Medical Record No. |
|---|---|---|---|---|
| Alt. Physician | MCFARLAND, JOHN | Alt. Telephone | 334-705-1154 | 430491 |
| Allergies | | Rehabilitative Potential | | |

| Diagnosis | | | | |
|---|---|---|---|---|
| Medicaid Number | Medicare Number | Approved By Doctor: By: V. Frahn | Title: LPN | Date: 2/1/08 |
| | | D.O.B. | Sex | Room # | Pmnt Code | Admission Date |

| RESIDENT | DAVIS, ROBERT | 02/07/1964 | | DAVIR99 | 01/16/08 |

# EXHIBIT 17

Lee County Detention Center
Medical Charge Form
dated January 15, 2008

# LEE COUNTY DETENTION CENTER
## MEDICAL CHARGE FORM
### (FORM #33)

*400*
*6153*
*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*

INMATE NAME *Davis, Robert*

DATE OF BIRTH _____    RACE/SEX _____

SOCIAL SECURITY# _____    CELL *405*

## ***SERVICES & FEES***

☐ SICK CALL            $10.00
☐ DOCTOR VISIT         $10.00
☐ DENTIST VISIT        $10.00
☐ PRESCRIPTION         $3.00
☐ FOLLOW-UP VISIT      N/A

TOTAL OF MEDICAL SERVICES    $*6*
RENDERED

# MEDICAL VERIFICATION SECTION

Authorized Nursing Staff Signature & Date _____ *1/15/0*

Inmate Signature & Date _____

## Inmate Account Payable Clerk Signature & Date

_____

☐ PLEASE CHECK IF INMATE IS INDIGENT TO PAY THE ABOVE CHARGES.

☐ PLEASE CHECK IF INMATE IS ABLE TO PAY THE ABOVE CHARGES.

MEDICAL FILE

FORM: LCS-DC33 (9/02)

# EXHIBIT 18

Lee County Detention Center
Medical Charge Form
dated February 5, 2008

# LEE COUNTY DETENTION CENTER
# MEDICAL CHARGE FORM
### (FORM #33)

INMATE NAME _Davis, Robert_

DATE OF BIRTH _____    RACE/SEX _____

SOCIAL SECURITY# _____    CELL _F2_

## ***SERVICES & FEES***

☐ SICK CALL            $10.00
☐ DOCTOR VISIT         $10.00
☐ DENTIST VISIT        $10.00
☑ PRESCRIPTION         $3.00    Hydrochlorothiazide
☐ FOLLOW-UP VISIT      N/A

TOTAL OF MEDICAL SERVICES    $ 3.00
RENDERED

# MEDICAL VERIFICATION SECTION

Authorized Nursing Staff Signature & Date _K Cey_    _2-5-08_

Inmate Signature & Date _CO-pay_

## Inmate Account Payable Clerk Signature & Date
_JM_

☐ PLEASE CHECK IF INMATE IS INDIGENT TO PAY THE ABOVE CHARGES.

☐ PLEASE CHECK IF INMATE IS ABLE TO PAY THE ABOVE CHARGES.

MEDICAL FILE

FORM: LCS-DC33 (9/02)

# EXHIBIT 19

Inmate Request Form
dated January 25, 2008

Request Slip                    1/23/08
                                D-3

From: Robert Davis
To: Tabb

Tabb I need a Ledger stating
my financial situation since
my arrival at the Lee
county Detention center.

Robert Davis

P.S. It's To be sent back
to the Courts to state
my Indigent status. I really
need a copy.

GAVE INMATE PRINTOUT OF
HIS FUNDS TRANSACTIONS

Tabb 4305
2-6-08

# EXHIBIT 20

Inmate Request Slip
dated February 27, 2008

Lee County Detention Center

# INMATE REQUEST SLIP

1-2
**LOCATION**

Name _Robert Davis_    Date _2/27/08_

- [ ] Telephone Call
- [ ] Special Visit
- [ ] Doctor
- [ ] Personal Problem
- [ ] Dentist
- [x] Other
- [ ] Time Sheet

Briefly Outline Your Request. _Give To Jailer_

_TABB I need a certified copy_
_of my financil or money on the book_
_you can do that for me_

_And some stamps that you can_
_provide for me_

Do Not Write Below This Line - For Reply Only

_GAVE INMATE DAVIS A COPY OF HIS_
_FUNDS TRANSACTIONS AND TWO STAMPED_
_ENVELOPES FOR HIS INDIGENCY_

_#4305_
_2-28-08_

Approved _____    Denied _____    Collect Call _____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To Those The Request is Directed.

- [ ] Lieutenant
- [ ] Chief Deputy
- [ ] Sheriff

Date _____    Time Received _____

CORRECTION OFFICER _____

FORM: LCS-038 (5/98)

# EXHIBIT 21

Alabama Department of Public Health
Food Establishment/Retail Food Store
Inspection Report

# ALABAMA DEPARTMENT OF PUBLIC HEALTH
## FOOD ESTABLISHMENT / RETAIL FOOD STORE INSPECTION REPORT

SCORE **97**

Lee _____ COUNTY HEALTH DEPARTMENT

LEGAL NOTICE TO THE PROPRIETOR OR MANAGER: You are respectfully notified of such violations of the Alabama State Board of Health Rules for Food Establishment Sanitation as are indicated by a circle in the Inspection Report. This report constitutes an official notice to comply with Chapter 420-3-22 of the aforesaid Rules within a period of _____ days. Failure to comply with this notice may result in cessation of food service food store operations.

ESTABLISHMENT NAME: Lee Co. Justice Center

OWNER OR MANAGER NAME: Sheriff Jay Jones

ADDRESS: 2311 Gateway Dr

ZIP CODE: 36801

Opelika, AL

| PERMIT NUMBER | MO. | DAY | YEAR | INSP. TIME | | PERMITTED | PRIORITY CAT. | COMPLIANCE VISIT/ INSP. REQUIRED | NO. OF CRITICAL |
|---|---|---|---|---|---|---|---|---|---|
| 4307-01 | 06 | 28 | 07 | OUT | | YES ☑ | | YES ___ NO ✓ | ITEMS 0 |
| | | | | IN | | NO ☐ | | | |

### CRITICAL ITEMS REQUIRING IMMEDIATE ACTION

## MANAGEMENT AND PERSONNEL

| | | |
|---|---|---|
| 01* | Assignment of Person in charge; Commissary used. Personnel with infections restricted, excluded. No discharges from eyes, nose, mouth. | 5 |
| 02* | Hands clean; properly washed. No bare hand contact ; approved alternative. No eating, drinking, tobacco use. | 5 |
| 03* | Demonstration of knowledge: Approved course, other requirements met | +2 5 |
| 04 | Clean clothes; Hair restraints; Nails. Authorized personnel. Other. | 1 |

## FOOD

| | | |
|---|---|---|
| 05* | Safe; Source; Condition; Not adulterated; Shellstock tags; Compliance with plan/ROP. Other. | 5 |
| 06* | Potentially hazardous food meets temperature requirements during receiving, cooking, hot holding, cooling. Pasteurized eggs used if required. | 5 |
| 07* | Potentially hazardous food meets temperature requirements during cold holding. Time as a public ___ 41°F. Consumer Advisory used if required. | 5 |
| 08* | Food separated, protected from contamination. Tasting. Returned, reservice of food. | 5 |
| 09 | Cooling methods. Facilities to maintain product temperature. Plant food cooking. | 1 |
| 10 | Properly labeled; Original container. Records. Code date limits. | 1 |
| 11* | Thermometers provided, accurate, conspicuous. | (1) |
| 12 | Approved thawing methods used. | 1 |
| 13 | Food contamination prevented during storage, preparation, display, handling, other. | 1 |
| 14 | In use, between use, food/ice dispensing utensils properly stored. | 1 |

## EQUIPMENT, UTENSILS, AND LINENS

| | | |
|---|---|---|
| 15* | Equipment; food contact surfaces (non-cooking) clean; sanitized. Sanitization temperature, concentration, time. | 5 |
| 16* | Food contact surfaces characteristics. Single service/use used when required. | 4 |
| 17 | Cooking surfaces, non-food contact surfaces: clean. Frequency; Methods. | 1 |
| 18 | Food (ice), Non-food contact surfaces: constructed, cleanable, installed, located. | 1 |
| 19 | Warewashing facilities: designed, constructed, maintained, installed, located, operated. Accurate thermometers, Chemical test papers. | 1 |
| 20 | Linens properly stored, dried, handled. Laundry facilities used. | 1 |
| 21 | Wiping cloths; clean, use limitations, stored. | 1 |
| 22 | Storage, handling, drying of clean equipment, utensils. | 1 |
| 23 | Single service articles, storage, dispensing, wrapped, Use limitations. Gloves used properly. | 1 |

## WATER, PLUMBING, AND WASTE

| | | |
|---|---|---|
| 24* | Water: Source; Cross connection; prevented; transported; Stored. | 4 |
| 25* | Sewage, grease disposal: System approved; Flushed (mobile). | 4 |
| 26* | Cross connection; Back siphonage; Backflow. | 4 |
| 27* | Handwashing facilities: Toilets; Number, location. | 4 |
| 28 | Water supply, Waste disposal: Approved system (fixtures), materials, design, operation; maintenance. Other liquid wastes properly disposed. Service sink provided. | 1 |
| 29 | Handwashing facilities: Soap, towels, drying device, sign, use restrictions. | (5) |
| 30 | Toilet rooms constructed, supplied. | 1 |
| 31 | Refuse, recyclables, and returnables. Outdoor/Indoor storage area approved. Receptacles (number); covered. Approved refuse disposal method. | 1 |

## PHYSICAL FACILITIES

| | | |
|---|---|---|
| 32* | Food contamination from cleaning equipment prevented. | 4 |
| 33* | Presence of insects, rodents, other pests. Animals prohibited. | 4 |
| 34 | Pests control methods approved, used. Pest control devices serviced as required. | 1 |
| 35 | Premises, Free of litter, harborage. | 1 |
| 36 | Floors, walls, ceilings, attached equipment: clean. Outer openings protected. Surface characteristics, indoor, outdoor: Maintained. Cleaning frequency, dustless methods. Absorbent floor materials properly used. | 2 |
| 37 | Lighting, Ventilation: adequate. Ventilation system (filters), clean, operated. Lights shielded. | 1 |
| 38 | Dressing rooms provided. Employee designated areas properly located. Living/sleeping quarters separation. | 1 |
| 39 | Cleaning, maintenance tools properly stored. | 1 |

## POISONOUS OR TOXIC MATERIALS

| | | |
|---|---|---|
| 40* | Toxic or poisonous items; Medicines; First aid materials: Stored; Labeled; Used. | 4 |
| 41 | Other personal care/first aid items: Stored; Labeled. Toxic or poisonous materials separation: Non-toxic tracking powder. | 1 |

## OTHER

| | | |
|---|---|---|
| 42 | Permit, Report, Other properly posted. Administrative requirements, HACCP plan | 1 |

RECEIVED BY: Name J. H. Roberson
Title

INSPECTED BY: Name _____

REMARKS: #29- Need towels at & all hand sinks /need soap at one hand sink. #11- Need accurate thermometer in reach in refrigerator.

ADPH-FLP-103/Rev. 11-04-kw

Page 1 of ___

# EXHIBIT 22

State of Alabama Department of Corrections
Jail Inspection Report

N911
DOC form 914
Rev. 2/94



# STATE OF ALABAMA

**DEPARTMENT OF CORRECTIONS**
Engineering Administrative Division
2265 Maron Spillway Road
Elmore, Alabama 36025
(205) 567-1556



# JAIL INSPECTION REPORT

Sheriff/Chief of Police _Jay Jones_

City _Opelika_

County _Lee_

Phone No. _____

Jail _Lee County_

Date _6-13-2007_

Time _11:25 AM_

Inspector _Sidney Pridden_

This is to report conditions of your jail as of this date of inspection. Please carefully note and make needed corrections. These adjustments are necessary to bring your facility into compliance with the standards set forth in Title 14, Code of Alabama, 1975.

—**CHECK MARK** indicates most accurate description—

**WHAT GOVERNING BODY HAS SUPERVISORY POWER?**

City Council _____ County Commission ✓

**POPULATION:** _252 M 30 F_

STATE
W/M___ B/M___ W/F___ B/F___ TOTAL___

COUNTY
W/M___ B/M___ W/F___ B/F___ TOTAL___

CITY
W/M___ B/M___ W/F___ B/F___ TOTAL___

FEDERAL
W/M___ B/M___ W/F___ B/F___ TOTAL___

JUVENILES
W/M___ B/M___ W/F___ B/F___ TOTAL___

GRAND TOTAL _____

**JAIL CAPACITY:**
MALE _26_ FEMALE _3_ JUVENILE _0_ TOTAL _424_

1. Are Female Prisoners housed separately? ...... YES___ NO ✓ NONE___

2. Are separate quarters available for Juveniles?... YES___ NO___ NONE ✓

3. Number of state inmates ON WAIVER _____

**JAIL EMPLOYEES:**

1. Number of Jailers .......................... ✓
2. Number of Matrons .......................... ✓
3. Other Employees .......................... ✓
4. Are Jailers POST Certified? ........... YES ✓ NO___

**BUILDING:**

GENERAL APPEARANCE:

1. Exterior ............ Poor___ Fair___ Good ✓
2. Interior ............ Poor___ Fair___ Good ✓
3. Fence ...... Poor___ Fair___ Good___ None ✓
4. Yard ........... Poor___ Fair___ Good ✓ None___
5. Type of Construction: .. Brick ✓ Cement___ Wood___ Other___
6. Year Constructed: _1987 2007_
7. Types of Locking Devices: ......... Manual ✓ Electric___
8. Condition of Locking Devices: .... Poor___ Fair___ Good ✓ None___
9. Observation
10. Windows: ........ Poor___ Fair___ Good___ None ✓
11. Screens: ........ Poor___ Fair___ Good___ None ✓
12. Grills: .......... Poor___ Fair___ Good___ None ✓
13. Windows: ........ Poor___ Fair___ Good___ None ✓
14. Cells: .......... Poor___ Fair___ Good___ None ✓

**SAFETY FEATURES:**

1. Emergency Exits: ... Poor___ Fair___ Good___ None___
2. Fire Apparatus: ..... Poor___ Fair___ Good___ None___
3. Stairways: ......... Poor___ Fair___ Good___ None___
4. Elevators: ......... Poor___ Fair___ Good___ None___

5. Is there an EMERGENCY (fire) EVACUATION plan POSTED? ... YES ✓ NO___
6. Are Fire and Safety precautions observed? ................. YES ✓ NO___
   If NOT, explain in Comments section.

**TRAINING:**

IN-SERVICE: ....................... YES ✓ NO___
Other: _____

**ARE OPERATING PROCEDURES WRITTEN?** ......... YES ✓ NO___

**IS THERE A PRINTED MANUAL?** .............. YES ✓ NO___

**JAIL RECORDS:**

1. Arrest Record .................... YES ✓ NO___
2. Are personal property and cash receipted? ...................... YES ✓ NO___
3. Visits ........................... YES ✓ NO___
4. Medical ......................... YES ✓ NO___
5. Commitment and Discharges ...... YES ✓ NO___
   Are Jail Records Adequate? ........ YES ✓ NO___
   Are Prisoners Fingerprinted? ....... YES ✓ NO___
   Are Prisoners Photographed? ...... YES ✓ NO___

**SECURITY:**

1. Is the jail reasonably secure? .............. YES ✓ NO___
2. Are periodic inspections made of security facilities? ......... YES ✓ NO___
3. Are firearms stored safely? ........ YES ✓ NO___
   Where are they stored? _lockbox_
4. Are there regulations prohibiting carrying of firearms into the Jail? ............ YES ✓ NO___
5. KEY CONTROL: Are keys ever in possession of inmates? .......... YES___ NO ✓
   Are keys properly stored and accounted for? ....... YES ✓ NO___
6. How often are prisoners quarters visited? _hourly_
7. Is jailer on duty 24 hours daily? ................. YES ✓ NO___
8. Are CHECKS conducted at night? ................. YES ✓ NO___
   Are CHECKS logged? ......... YES ✓ NO___
9. Are complete SHAKEDOWNS accomplished? .... YES ✓ NO___
10. Are periodic COUNTS conducted? ............. YES ✓ NO___

Page 1 of 3

**INSPECTORS COMMENTS:** _____

New Addition     1st Floor
\* Video Visitation
660 Block will house Juvenile
Inmates 21
Pods have space with target

New Section that kitchen and
Laundry    old Section retained laundry
To Be
Old kitchen will be removed from
Medical Ward

Females will remain in old
Section of Jail - will be relocated
to a new area [open bay] that will house 37
2 other areas will house them as
high of (63)

Improvements and renovations are
being accomplished in old section. Number
of Inmates per Block reduced

New Section is impressive !!!

_____
Inspector's Signature

Time of Completion _____

Copy Received By:
_____
SIGNATURE

_____
SIGNATURE

_____    _____    _____
Date    Office

_____    _____
Date    Office

Copy: State Fire Marshal ☐
    County Health Department ☐
Page 3 of 3

# EXHIBIT 23

Lee County Sheriff's Office
Special Report dated February 12, 2008

*Inmate File*

# LEE COUNTY SHERIFF'S DEPARTMENT
## SPECIAL REPORT

**Subject:** Imate Robert Davis letter of grievance          **DATE**          Feb.12,2008

**To the Sheriff of Lee County:**

**I report the following**          LT.Jones physically inspected cellblock F-2 to find out that

most of his grievances were not valid.          **which occurred at**          **13:00**  **o'clock**

          **pm**          **AT** LEE COUNTY DETENTION CENTER

Below give full-particulars, together with name of principals and witness and their address

          On Feb.12,2008 at approximately 13:00 hrs. LT.Jones went to cellblock F-2 to
follow up on a letter of grievance written by Inmate Robert Davis. After physically inspecting the
cell block LT.Jones could not validate any of the grievance written by Inmate Robert Davis.
Inmate Davis grievances were not valid due to several reasons mainly being that each item he listed
as broken was tested and proven to be fully functional.When asked about the grievance of chipping
paint Inmate Davis stated "He meant the paint chipping off the floor".When inspected by LT.Jones
the only visible sign of chipping of the floor paint would be everyday wear from a coated floor.
The only item listed that wasn't fully functional was the intercom in which maintenance was made fully
aware in order to resolve the issue. Inmate Robert Davis cmplained of rottens and critters crawling
around and in his food but no visible evidence could be produced to validate the grievance.

          NOTHING FURTHER

**Reported by:**          LT.Timothy C.Jones 43D5

**Address:**

**Complaint received by:**

**Assigned to:**

# EXHIBIT 24

Inmate Request Slip
dated February 21, 2008

Lee County Detention Center

# INMATE REQUEST SLIP

F-7
_____
LOCATION

Name _Robert Davis_____    Date _2/21/08_____

☐ Telephone Call    ☐ Doctor    ☐ Dentist    ☐ Time Sheet

☐ Special Visit    ☒ Personal Problem    ☒ Other

Briefly Outline Your Request. <u>Give To Jailer</u>    CAPtain Welch

I "VA written request form after request form for my granted need of the ① Law Library ② The Notary Public. (A) Why I am I being denied denied? Let refrain this. Never being answered at all first. I need these services. May they become available To me.

<u>Do Not Write Below This Line</u> - For Reply Only

Took To Law Library
2/23/08    18:15 - 19:30
Sgt. Com___

Approved _____    Denied _____    Collect Call _____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To Those The Request is Directed.

☐ Lieutenant    ☐ Chief Deputy    ☐ Sheriff

Date _____    Time Received _____

CORRECTION OFFICER _____

FORM: LCS-038 (5/99)

# EXHIBIT 25

Inmate Request Slip
dated February 20, 2008,
with attached letter and Lee County
Sheriff's Office Special Report as response

Lee County Detention Center

# INMATE REQUEST SLIP

F-2
### LOCATION

Name _Robert Davis_          Date _2/20/08_

☐ Telephone Call      ☐ Doctor         ☐ Dentist      ☐ Time Sheet

☐ Special Visit       ☒ Personal Problem              ☒ Other

Briefly Outline Your Request.  Give To Jailer

GRIEVANCE TO: Captain Welch
Against the person or persons who auth
orized the search and who carried out
the search of F-2 on 2/19/08 without
our present. I'll like to sign a warrant
if I may. Tampering with Evidence, and
stolen property. My legal work was
rummage through up on our return.

Do Not Write Below This Line - For Reply Only

You are a ward of the county and you
are on county property, search warrants
arent needed, and your property can
be searched at any time
                              Capt. C. Wilson
                              2-20-08

Approved _____ Denied _____ Collect Call _____

All Request Will Be Routed Through The Sergeant Over The Jail, Then Forwarded To
Those The Request is Directed.

☐ Lieutenant        ☐ Chief Deputy           ☐ Sheriff

Date _____ Time Received _____

CORRECTION OFFICER _____

FORM: LCS-036 (6/99)

cell to be searched and ransacked for no apparently reason. I knew they want to get back at me, but why my cell mates? Is it reprisal?

(D) I was informed that officer Parquett carried out the search. I can't be sure one way or another I wasn't here. All my legal papers were laid out on top of bunk #10 when I left

written and Sign

Robert Davis

P.S. After further investigation into my legal work and papers. I Robert Davis truly beleive some of my papers are missing or have been made a copy of. I would like to sign an arrest warrant for the theft properly. But I don't know which officer had the chance to examine my work at the time to remove the paper. That's called tampering with evidence. Open to file charges In the future some one even looked In Witness. Robert Davis
my Bible

① Marshall Henson
② Julius Williams
③ G. Knight
④

anytime. The cell was inspected and was found
to be in poor condition Beds not make and
property not in or under bunks and in items
not in property box or bag. T.V. was not
removed until cell was in complance
$\propto$

Inmate respond was give thru Sgt. Tabb    2-22-08
verbal because form was used with carlson.

# LEE COUNTY SHERIFF'S DEPARTMENT
## SPECIAL REPORT

Subject: Robert Davis (F2)     DATE  2-22-08

To the Sheriff of Lee County:

I report the following   Cellblock inspection in F2.

_____ which occurred at _____ o'clock

this _____ AM     LCDC _____

Below give full-particulars, together with name of principals and witness and their address

On 2-19-08 @ 0900 while conducting a
routine cell inspection no legal papers were
removed from Robert Davis' personal property
                              Respectfully submitted
                              Sgt Jerssiber Chambers

Reported by: _____

Address: _____

Foregoing ____ received by: _____

Assigned to: _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ROBERT LOUIS DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:08-cv-00083-MEF-CSC** |
| | ) | |
| **CARY TORBERT, JR., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**AFFIDAVIT OF CARY TORBERT, JR.**</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF LEE** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Cary Torbert, Jr., who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Cary Torbert, Jr.  I am over the age of nineteen and competent to execute this affidavit.

2.    I serve as Chief Deputy for Lee County, Alabama with the rank of Major.  I was so employed during the Plaintiff's incarceration in January and February, 2008.

3.    The Lee County Sheriff's Office operates the Lee County, Alabama Detention Center according to a written set of policies and procedures which governs the conduct of the persons employed at the Detention Center.

4.    It is the policy of the Lee County Sheriff's Office that all inmates confined in the Lee County Detention Center be entitled to a level of health care comparable to that available to citizens in the surrounding community in order to ensure their physical and

emotional well-being. All medical services rendered to inmates in the Lee County Detention Center are given under the direction of a licensed health care provider. Sheriff's Office personnel are prohibited from ever summarily or arbitrarily denying an inmate's reasonable request for medical services. Medical, dental, and mental health matters involving clinical judgments are the sole province of the responsible physician, dentist, or psychiatrist or qualified psychologist, and no member of the jail staff is allowed to substitute his or her judgment for those of the provider. Inmates are guaranteed access to any diagnostic, laboratory, or other treatment services as directed by the Detention Center health care authority.

5.     It is the policy of the Lee County Sheriff's Office that persons incarcerated in the Lee County Detention Center be entitled to safe dispensation and administration of prescription and nonprescription medication. All medication prescribed for an inmate by a health care provider during the term of the inmate's incarceration is obtained by the Sheriff's Office and distributed to the inmate according to his or her doctor's directions.

6.     All medication prescribed for inmates in the Lee County Detention Center is distributed either by or under the direction of the jail's nurse. Records are kept reflecting the type of medication distributed to an inmate, the time the inmate received the medication, and the initials of any Detention Center official dispensing the medication. These records are placed in the inmate's Detention Center medical file.

7.     Inmates may, at any time, request to see the jail's nurse at "sick call," which is conducted on a regular basis. Inmates who are not indigent may be charged for sick call, physician visits, laboratory fees, and dentist's visits, or prescription fees. Currently, the fee for obtaining a prescription for an inmate is $3.00.

8.     If an inmate has insufficient funds in his or her jail account to pay for any type of fees, services will not be denied. If an inmate has no funds in his or her jail account, a lien will be placed on the inmate's jail account against future deposits to the account. No inmate who is indigent is charged any amount for any type of medical services or prescriptions, and is not denied any type of services because of an inability to pay.

9.     It is the policy of the Lee County Sheriff's Office that inmates incarcerated in the Lee County Detention Center be provided with a nutritionally adequate diet. In order to ensure that this takes place, menus have been submitted to and approved by a registered dietician at Auburn University. Any menus which are modified are changed in such a manner so that foods substituted are equal in nutritional values to those originally planned for.

10.     Inmates in the Lee County Detention Center are served three meals each day at regularly scheduled times. At least two of those meals are hot. Unless unusual circumstances warrant, all meals served to inmates are prepared in the kitchen at the Lee County Detention Center under supervision of the jail staff. Inmates on work release, or work details, may receive food either at the Detention Center, by a sack lunch, or from an outside source during the time they are away from the Detention Center.

11.     It is the policy of the Lee County Sheriff's Office that adequate health protection be provided at the Detention Center for both staff and inmates by requiring that persons working in food service areas to meet established health and sanitation standards. Generally, persons who are working in food services must pass a tuberculosis test before beginning work. The general health of all inmate workers is monitored by a corrections officer assigned to supervise the food service area in order to ensure that inmate workers are free from illness which may be transmittable by food. All persons working in the food service area are also monitored for cleanliness and instructed to wash their hands upon beginning

3

work or returning from toilet facilities. All persons working in the food services area are required to wear hairnets, shower at least once each day or, if necessary, more often, and to have clean laundry daily. Temperatures of the refrigerators, freezers, and dishwater are checked daily, and all areas of the kitchen are cleaned on an ongoing basis. The kitchen is regularly inspected by a senior member of the jail staff in order to ensure that all safety and sanitation standards are being met. In addition, members of the jail staff are required to cooperate with the Alabama Department of Public Health, the Alabama Department of Corrections, the State of Alabama Fire Marshal's Office, or any other agency inspecting the Detention Center and/or the Detention Center's kitchen. Any problems noted during the inspection of the Detention Center or its kitchen by any outside agencies are, if possible, immediately remedied.

12.    The officers assigned to supervise the kitchen facilities at the Lee County Detention Center inspect food service areas and equipment after each meal to be sure that they are clean and sanitary. All utensils, trays, cups, and other items used in the preparation and service of meals are washed and sterilized after each use. Kitchen floors are swept and mopped after each meal. Refrigerators and freezers are cleaned and kept frost-free. Countertops and work areas are cleaned after each use. A general cleaning of the entire food service area takes place at least once each week, and other areas, such as piping, fans, and lights are cleaned as needed.

13.    All meals at the Lee County Detention Center are prepared in a clean and sanitary manner. Only government inspected meats and poultry are served, and no home canned or preserved foods are served. Raw foods are washed and cleaned thoroughly before being served.

4

14.    A member of the Detention Center staff observes the service of all food to inmates in order to ensure that proper portions of food are on each tray.

15.    It is the policy of the Lee County Sheriff's Office that a healthy environment be maintained within the Lee County Detention Center for the benefit of both inmates and the Detention Center staff.    In order to accomplish this goal, the Chief Deputy, Captain, Lieutenant, and shift supervisor are charged with the responsibility of ensuring that all ventilation and heating units in the Detention Center are functioning properly and circulating a sufficient amount of air.  Also, the entire staff is charged with the responsibility of taking measures within their control to ensure that proper temperature is maintained at all times. Lighting within the Detention Center is sufficient, and broken, damaged, or burned out fixtures are replaced as soon as practical.

16.    Plumbing facilities within the Lee County Detention Center are maintained in order to ensure that both hot and cold running water and toilet facilities are available to inmates at all times.   Any failures of the mechanical features of the jail are reported immediately to a senior officer on duty, who is charged with taking immediate action to safeguard inmates and staff until the problem can be corrected.  The Chief Deputy and a fire safety officer are required to conduct tests, as necessary to verify that proper fire procedures and safeguards are in place.

17.    All employees of the Lee County Detention Center are charged with the responsibility of continuously monitoring all environmental conditions within the facility and reporting any problem to the senior officer present immediately upon learning of the problem.

18.    It is the policy of the Lee County Sheriff's Office that a high level of pest and vermin control be maintained within the Detention Center in order to ensure a minimum level of infestation.  I am charged by the Sheriff with the responsibility of ensuring that all areas of

5

the Detention Center are sprayed with insecticide by a licensed pest control company at least once each month. Shift supervisors are charged with the responsibility of observing the effectiveness of pest control services and, when conducting daily housekeeping inspections, looking for possible or potential vermin or pest problems. Any such problems must be immediately brought to my attention.

19.    It is the policy of the Lee County Sheriff's Office that the Lee County Detention Center accomplish scheduled maintenance in order to ensure that the facility and its equipment are kept in good repair. Living areas within the Detention Center are, insofar as possible, kept free of litter, dust, mold, mildew, corrosion, vermin, or any other objectionable or unhealthy condition. Plumbing within the Detention Center is to be maintained in a serviceable condition, free from leakage. Regular inspections take place to ensure that all plumbing has a sufficient amount of pressure to accomplish the tasks intended, and that water is at the appropriate temperature. Any maintenance problems are reported on a daily Detention Center Log, and the Captain or I are to be notified so that any problem may be corrected.

20.    It is the policy of the Lee County Sheriff's Office that the staff at the Lee County Detention Center maintains strict sanitation practices which provide persons incarcerated in the Detention Center and members of the Detention Center staff with a healthy and sanitary living and working environment. In furtherance of this policy, all areas of the Lee County Detention Center, including calls, floors, walls, sinks, toilets, and showers are cleaned each day. Inmates serving sentences are required to do such work as the Sheriff or I deem reasonable to maintain the sanitary conditions throughout the Detention Center. All inmate cleaning activities are supervised by a member of the jail staff to ensure that the work is thorough and complete.

21.     At least twice each week I inspect all areas of the Lee County Detention Center to ensure that proper sanitation practices are being carried out by the staff and inmates. As a part of this inspection, I make sure that all areas of the facility are clean and orderly, that lighting and ventilation equipment are working properly, and that no health or safety hazards exist.

22.     I am charged by the Sheriff of Lee County with the responsibility of reviewing all inspection reports by outside agencies and implementing any necessary plans of action to correct all health and sanitation deficiencies noted on reports resulting from such inspections. Each shift supervisor is charged with the responsibility for ensuring that the Detention Center is cleaned during his or her shift pursuant to my direction. Shift supervisors must inspect all areas of the Detention Center during and after clean up to ensure that assigned tasks were completed.

23.     It is the policy of the Lee County Sheriff's Office that a supply of cleaning materials be kept on hand to sustain daily housekeeping practices within the Detention Center. Members of the Detention Center staff are required to maintain a housekeeping plan and to carry that plan out on a daily basis.

24.     It is the policy of the Lee County Sheriff's Office that persons incarcerated in the Lee County Detention Center be given a clean set of facility issued clothing, linens, bedding, and a towel upon admission to the Lee County Detention Center in order that their sanitation and hygiene may be maintained. All facility issued clothing and linens are laundered at the Lee County Detention Center. Linens are laundered at least once each week; blankets are laundered at least once each month. When an inmate leaves the Detention Center, all clothing, linens, and blankets belonging to the Detention Center are collected and laundered before being reissued.

7

25.    It is the policy of the Lee County Sheriff's Office that personnel employed at the Lee County Detention Center be aware of and protect inmate rights, both civil and legal, and that inmates have access to the courts, attorneys, and their authorized representatives. In furtherance of this policy, inmates may conduct written communications with attorneys or courts, use telephones in the Detention Center's day rooms each day, have visits from attorneys, probation officers, and others authorized for legal visits, and may visit a law library maintained by the Sheriff's Office. Inmates who are indigent are provided with stamps in order that they may communicate by mail.

26.    It is the policy of the Lee County Sheriff's Office that members of the Detention Center staff receive and answer any written grievances or requests made by inmates to the Sheriff, myself, or any Detention Center personnel. All such requests must be made in writing on an Inmate Request Form. Members of the jail staff are charged with the responsibility of distributing Inmate Request Forms to inmates who wish to utilize them. Requests of an emergency nature are handled immediately, without the necessity of a written request. All requests are forwarded to me, and, if necessary, I will send the request to any other responsible or proper authority. If possible, members of the Detention Center staff receiving a grievance from an inmate should answer that grievance. If he or she is not able to do so, the grievance should be forwarded to me for additional action. Detention Center staff receiving a grievance from an inmate must review the grievance, write a response, sign and date the response, place a copy of the response in the inmate's jail file, and return a completed copy to the inmate. Any inmate who is dissatisfied with the response he receives may appeal, in writing, to the next higher level in the chain of command of the Sheriff's Office. No negative sanction may be taken against any inmate for filing a grievance.

27.    Notary services are made available to persons incarcerated in the Lee County Detention Center for any documents requiring verification. An inmate may obtain a notary seal by submitting a request form, along with a copy of the document which he wishes to have notarized. I will either have the document notarized and returned to the inmate, or returned without a notary seal if a notary's verification is unnecessary.

28.    It is the policy of the Lee County Sheriff's Office that frequent, unannounced searches of inmates, their cells, and all other areas of the Lee County Detention Center be conducted by the Detention Center's staff in order to secure the facility's safety and security. All searches are required to be done in a manner which avoids unnecessary force, embarrassment, or indignity to the inmate. All items found during searches which are deemed to be contraband are to be dealt with appropriately, by securing such items and evidence and/or disposing of such items.

29.    The Lee County Sheriff's Office employs the services of a licensed nurse, Linda Stewart, and a physician, Dr. John McFarland, to provide medical services to inmates.

30.    A licensed pest control company, Terminix, is employed to spray for bugs and vermin in the Lee County Detention Center at least once each month. They may be called in more frequently, as needed.

31.    I make regular inspections of the Lee County Detention Center. During those inspections, I have not seen any spiders in the Detention Center. To the best of my knowledge, no rats or mice are present at the Detention Center. Had rats, mice, or any other vermin been present during any inspection, or had their presence been brought to my attention by some other means, I would have taken appropriate measures to eliminate such problems.

32.    The Lee County Detention Center expanded and opened new housing areas during 2007. In spite of this expansion, the Detention Center occasionally has fewer beds

than inmates. In addition, particular classification areas within the Detention Center may have more inmates assigned to them than there are beds in that area. No inmates, however, are required to sleep on the floor. Inmates are issued either a temporary bunk, or, at the very least, a mattress which is either placed on the floor, or, if possible, a table or other raised area. Inmates who are not assigned a jail bunk are given one as soon as one becomes available.

33.    I deny that Robert Davis has been required to live in any type of conditions which were inhumane, inhuman, or in any way detrimental to his health or well-being at the Lee County Detention Center. The Lee County Detention Center is cleaned regularly, and unclean, unsafe, or unhealthy conditions are not tolerated.

34.    The Plaintiff states in his Complaint that Inmate Requests which he has sent to various members of the Detention Center staff, and Sheriff Jay Jones, have not been answered. I know that this is simply not true. All requests submitted by Inmate Davis during his incarceration were responded to in a prompt and appropriate manner.

35.    I deny that I have, at any time, failed to respond to any reasonable request submitted by Inmate Davis, or to address any grievance which he made during his incarceration in the Lee County Detention Center.

36.    Notary services are available to inmates in the Lee County Detention Center upon request. Robert Davis has never submitted any type of documents with requests that they be notarized.

37.    On February 21, 2008, Robert Davis submitted an Inmate Request Slip asking to use the library and for a notary. No documents were referenced or attached to that Request Slip. Inmate Davis was taken to the law library on February 23, 2008 and spent approximately and hour and fifteen minutes there.

38.    Had Robert Davis, or any other inmate in the Lee County Detention Center, submitted valid documents requiring a notary seal, notary services would have been provided to him. The Lee County Sheriff's Office does not impede an inmate's access to the courts in any way, and does not deny notary services when such services are necessary.

39.    Inmate Robert Davis, during part of his incarceration in Lee County, Alabama, was allowed to participate in work details which leave the jail facility. On February 20, 2008, Inmate Davis submitted a grievance stating that persons had entered his living area while he was out on a work detail and searched that area. A response was forwarded to Inmate Davis stating that the Detention Center was county property, that no search warrants were needed to inspect it, and that as an inmate, his property could be searched at any time.

40.    Inmate Davis' February 20, 2008 grievance also stated that legal papers had been rummaged through during the search of his cell. This matter was investigated by Sergeant Jessica Chambers of the Lee County Sheriff's Office, who found that no legal papers were removed from Davis' personal property.

41.    I deny that I have conducted any type of illegal search of the Plaintiff's property or belongings in the Lee County Detention Center. At no time were legal papers taken from the Plaintiff, read, or misused in any way by a member of the jail staff. All searches of the Plaintiff's housing area and belongings were conducted in compliance with state and federal law.

42.    I deny that I have acted, or caused anyone to act in such a manner as to deprive the Plaintiff, Robert Louis Davis, of any right to which he is entitled.

43.    I certify and state that the documents provided to the Court which are attached to the Special Report are true and correct copies of inmate records, kept at the Lee County Detention Center in the regular course of business.

11

44.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.


_____
CARY TORBERT, JR

**SWORN TO** and **SUBSCRIBED** before me this 2ND day of April, 2008.


_____
NOTARY PUBLIC
My Commission Expires: 1/9/11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT LOUIS DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:08-cv-00083-MEF-CSC |
| | ) | |
| CARY TORBERT, JR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF COREY WELCH

| | |
|---|---|
| STATE OF ALABAMA | ) |
| | ) |
| COUNTY OF LEE | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Corey Welch, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Corey Welch. I am over the age of nineteen and competent to execute this affidavit.

2.      I am employed by the Lee County Sheriff's Office and assigned to serve as a corrections officer at the Lee County Detention Center. I have worked as a correctional officer for over ten years, having obtained the rank of Captain. I am both a graduate of the Police Academy and the Alabama Jail Management School.

3.      Inmates incarcerated in the Lee County Detention Center may purchase through the jail's Commissary any type of personal hygiene items that are available. Inmates such as Robert Davis, who are indigent, have "indigent packages" made available to them. These packages contain soap, deodorant, toothbrushes, and other necessary personal hygiene items. Indigent inmates may request such packages at any time, and they are freely given, unless the inmate is somehow misusing the items, or abusing the system in some way.

4.    At no time during his incarceration in the Lee County Detention Center was Robert Davis denied personal hygiene items due to his indigency.  Personal hygiene items were distributed to him whenever he requested them, and if he has, at any time, been without such items, it is due to his failure to request them.

5.    I deny that the Plaintiff has been required to live in any type of conditions which were inhumane, inhuman, or in any way detrimental to his health or well-being.  The Lee County Detention Center is cleaned regularly, and unclean, unsafe, or unhealthy conditions are not tolerated.

6.    I deny that I have acted, or caused anyone to act in such a manner as to deprive the Plaintiff, Robert Louis Davis, of any right to which he is entitled.

7.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

COREY WELCH

**SWORN TO** and **SUBSCRIBED** before me this 2nd day of April, 2008.

NOTARY PUBLIC
My Commission Expires:__1/9/11__

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT LOUIS DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:08-cv-00083-MEF-CSC** |
| | ) | |
| **CARY TORBERT, JR., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF RAY ROBERSON

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF LEE** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Ray Roberson, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.    My name is Ray Roberson.  I am over the age of nineteen and competent to execute this affidavit.

2.    I am employed with the Lee County Sheriff's Office and serve as Assistant Jail Administrator at the Lee County Detention Center.  I have worked in the Lee County Detention Center for twenty-three years and have obtained the rank of lieutenant.

3.    Food served to inmate Robert Davis, and other persons incarcerated in the Lee County Detention Center, is wholesome, nutritious, and clean.  Regularly, members of the Detention Center staff eat the same food as that served to the inmates.  No persons known to the Defendants have had any ill effects from consumption of the Detention Center's food.  There have been no verified circumstances of foreign matter found in food which are attributable to members of the kitchen staff, or to contaminated supplies.

4.    The Alabama Department of Public Health regularly inspects the Lee County Detention Center and its kitchen. The last such inspection took place on June 28, 2007. During that inspection, out of a possible score of 100, the Detention Center's kitchen received a grade of 97. Only two minor items were found to be deficient, and these were corrected immediately after the inspector pointed them out to the Detention Center's staff. No deficiencies of a critical nature were found.

5.    The Lee County Detention Center is regularly inspected by the State of Alabama Department of Corrections. The most recent inspection by the Department of Corrections took place on June 15, 2007. During that inspection, no major deficiencies were found in the operation of the facility.

6.    Persons preparing and serving food at the Lee County Detention Center are required to be clean, illness-free, and to conduct themselves appropriately during the preparation and service of food. Inmate trusties working in the food service areas must wear hairnets, wash their hands frequently, and are constantly under the supervision of a member of the jail staff to ensure that their practices are clean and acceptable.

7.    Lieutenant Timothy C. Jones, who is not a defendant in this case, conducted an investigation into the Plaintiff's complaints about conditions and food. Lieutenant Jones investigated the Plaintiff's claims that rodents and vermin were crawling in and around his food. The investigation revealed no visible evidence which could validate that claim. A copy of the written report answering Inmate Davis' claim was forwarded to Davis on February 12, 2008.

8.    I deny that I have, in any way, served unhealthy or unwholesome food to Robert Davis, or any other person incarcerated in the Lee County Detention Center, and state affirmatively that the food served to inmates at the Detention Center is wholesome, nutritious, and in adequate portions to constitute a healthy diet.

2

9.    I deny that I have acted, or caused anyone to act in such a manner as to deprive the Plaintiff, Robert Louis Davis, of any right to which he is entitled.

10.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

Ray Roberson
RAY ROBERSON

**SWORN TO** and **SUBSCRIBED** before me this 2nd day of April, 2008.

Marlene Powell
NOTARY PUBLIC
My Commission Expires: 1/9/11

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT LOUIS DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:08-cv-00083-MEF-CSC** |
| | ) | |
| **CARY TORBERT, JR., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF RODNEY TABB

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF LEE** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Rodney Tabb, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1.      My name is Rodney Tabb. I am over the age of nineteen and competent to execute this affidavit.

2.      I serve as a Corrections Officer at the Lee County Detention Center with the rank of Sergeant. I was so employed during Plaintiff's incarceration.

3.      At the time the Plaintiff was booked into the Lee County Detention Center, I completed a Medical Screening Form. The Plaintiff noted several past problems, and informed me that he was taking blood pressure medication.

4.    The Lee County Sheriff's Office charges inmates $3.00 for each prescription medication obtained for them during the time they are incarcerated in the Lee County Detention Center.  Inmates who are not able to pay are not required to make such a co-payment, and medications are distributed to them free of charge.

5.    The Plaintiff in this action, Mr. Robert Davis, has supplied the Court with a copy of his Funds Transactions for the time he was incarcerated in the Lee County Detention Center in 2008.  I gave him this form.  Twice on that Transaction Sheet it is noted that Mr. Davis has been charged $3.00 for a prescription medication for a total of $6.00.

6.    The Funds Transaction Sheet referenced above also reflects that Inmate Robert Davis has had no funds deposited into his account.  This qualifies Robert Davis as indigent, allowing him to receive his medication without prepayment, and also entitling him to receive other items given to indigent inmates.  Should funds be deposited in Davis' inmate account, he will no longer be considered indigent, and the $6.00 owed to the Sheriff's Office will be deducted from any such funds before they are made available to Davis for use at the Detention Center's Commissary or for other purposes.

7.    The only items I am aware of that would allow the Plaintiff to claim that his signature has been forged are two Lee County Detention Center Medical Charge Forms. These documents provide a place for an inmate's signature and date where a non-indigent inmate may verify that he is willing to have funds transferred to pay for a prescription, doctor's visit, or similar procedure.  Mr. Davis' signature was not forged on this document. His name appears at the top, and on the line for inmate's signature "co-pay" is written on each document.  Should funds become available to Mr. Davis in his inmate account, an

2

additional Lee County Detention Center Medical Charge Form will be completed which Mr. Davis will be required to sign before receiving additional medication or medical services.

8.    On January 25, 2008, Inmate Robert Davis submitted an Inmate Request Form to me requesting a "ledger stating my financial situation since my arrival at the Lee County Detention Center." I gave Inmate Davis a copy of his Funds Transaction Sheet on February 6, 2008.

9.    On February 27, 2008, Inmate Davis requested another copy of his Funds Transaction Sheet. The next day, February 28, 2008, I gave Inmate Davis another copy of his Funds Transactions and two stamped envelopes.

10.    I have never forged Inmate Robert Davis' signature on any document, nor has any other member of the Lee County Detention Center staff, to my knowledge.

11.    On February 22, 2008, I made an additional response to Inmate Davis' February 20, 2008 grievance regarding the search of his cell. In this response, I addressed the specific allegations made by the Plaintiff. My response stated, "Inmates' cells can be inspected and searched any time. The cell was inspected and was found to be in poor condition. Beds not made and property not in or under bunks and items not in property box or bag. TV was removed until cell was in compliance."

12.    I deny that I have acted, or caused anyone to act in such a manner as to deprive the Plaintiff, Robert Louis Davis, of any right to which he is entitled.

3

13.     I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

RODNEY TARR

**SWORN TO** and **SUBSCRIBED** before me this 2nd day of April, 2008.

NOTARY PUBLIC
My Commission Expires: 1/9/11

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **ROBERT LOUIS DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:08-cv-00083-MEF-CSC** |
| | ) | |
| **CARY TORBERT, JR., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### <u>AFFIDAVIT OF GWEN CRAWL</u>

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF LEE** | ) |

**BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Gwen Crawl, who being known to me and being by me first duly sworn on oath deposes and says as follows:

1. My name is Gwen Crawl. I am over the age of nineteen and competent to execute this affidavit.

2. I am employed as a Correctional Officer at the Lee County Detention Center. I was so employed during Plaintiff's incarceration.

3. The Plaintiff alleges in his Complaint that I frequently take supplies, presumably food, meant for inmates to my home. I deny that I have ever taken any type of food meant for inmates away from the Lee County Detention Center, to my home or any other location.

4. I deny that I have acted, or caused anyone to act in such a manner as to deprive the Plaintiff, Robert Louis Davis, of any right to which he is entitled.

5.    I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.


_Gwen Crawl_
GWEN CRAWL

**SWORN TO** and **SUBSCRIBED** before me this 2nd day of April, 2008.


_Marlene Powell_
NOTARY PUBLIC
My Commission Expires:___1/9/11___

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **ROBERT LOUIS DAVIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 3:08-cv-00083-MEF-CSC** |
| | ) |
| **CARY TORBERT, JR., et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**<u>AFFIDAVIT OF LINDA STEWART</u>**

| | |
|---|---|
| **STATE OF ALABAMA** | ) |
| | ) |
| **COUNTY OF LEE** | ) |

 **BEFORE ME**, the undersigned authority and Notary Public in and for said County and State at large, personally appeared Linda Stewart, who being known to me and being by me first duly sworn on oath deposes and says as follows:

 1. My name is Linda Stewart. I am over the age of nineteen and competent to execute this affidavit. I have been employed as a nurse with the Lee County Detention Facility for over six years. I am an L.P.N. and have been licensed for over twenty years, having served as a nurse in the ICU and CCU in Cobb Hospital Emergency Room for fifteen-years. I am a Certified Correctional Health Professional by the National Commission on Correctional Health Care. I taught Nursing Assistance Clinicals for two years at Career Institute. I collected medical information for the law firm of Bellamy and Jones for three years, and I was employed as the personal nurse for Doctor Hoffman, in Phenix City, Alabama, for twelve years, prior to my coming to the Lee County Detention Facility.

 2. I accompanied Dr. John H. McFarland when he examined Inmate Robert Davis after his admission to the Detention Center on January 9, 2008. During this examination, Inmate Davis stated that he was being treated for high blood pressure by Dr. Robert Klinner, Jr., and that he had

some sinus problems. Dr. McFarland decided to obtain records from Dr. Klinner regarding the Plaintiff's medication, and to check his blood pressure while waiting for those records to be delivered.

3.     Because inmate Robert Davis was taking medication at the time he was admitted to the Lee County Detention Center on January 9, 2008, arrangements were made to verify that medication with his treating physician in order that it might be continued. I faxed a Health Care Release signed by the Plaintiff to Dr. K.V. Klinner, Jr., the Plaintiff's treating physician. Dr. Klinner, in return, faxed medical records back to me verifying the Plaintiff's medication.

4.     Dr. McFarland and I examined Inmate Davis again on January 15, 2008. It was determined during this examination that Mr. Davis had an upper respiratory infection with probable sinusitis. A course of treatment was prescribed, including two prescription medications, Duratuss and Septra DS.

5.     On January 27, 2008, Inmate Davis once again reported to sick call and was examined by Dr. McFarland and me. On that date it was noted that his upper respiratory infection was resolving. He was also observed to have Dermatitis and was given hydrocortisone cream.

6.     Medications were distributed to Inmate Robert Davis according to his treating physician's instructions. Mr. Davis first began receiving medication on January 11, 2008 and, during his incarceration received five different types of medication. Medication administration records were completed to verify the dispensation of his medication during January and February, 2008.

7.     At no time during his incarceration in the Lee County Detention Center was Inmate Robert Davis denied medication, or medical care of any kind. Instead, he was properly treated for all medical conditions which he presented. Medication was never withheld for any reason. All prescription medication was given to Inmate Davis according to his doctor's directions.

8.     I certify and state that the documents from Plaintiff's medical file provided to the Court which are attached to the Defendants' Special Report are true and correct copies of inmate records, kept at the Lee County Detention Center in the regular course of business.  I am the Custodian of these Records.

9.     I deny that I have acted, or caused anyone to act in such a manner as to deprive the Plaintiff, Robert Louis Davis, of any right to which he is entitled.

10.     I swear, to the best of my present knowledge and information that the above statements are true, that I am competent to make this affidavit and that the above statements were made by drawing from my personal knowledge of the situation.

LINDA STEWART, CCHP/LPN

**SWORN TO** and **SUBSCRIBED** before me this 2nd day of April, 2008.

NOTARY PUBLIC
My Commission Expires: 1/9/11

3